JAMES NISBET, *et al.*

*v.*

BILLY JARRELL WATSON, *et al.*

*and*

FRANK FLOYD, *et al.*

*v.*

BILLY J. WATSON, *et al.*

(No. 13803)

Decided January 23, 1979.

*E. Dennis White, Jr. and Bernard T. Nibert, II,* for appellants.

*George L. Partain* for appellees.

CAPLAN, CHIEF JUSTICE:

The two captioned cases were consolidated for trial in the Circuit Court of Logan County and are so treated upon this appeal. Judgment was entered for all the plaintiffs and, upon the denial of the defendant's motion to set aside the verdict and grant a new trial, this appeal was prosecuted. We affirm the judgment of the trial court.

Plaintiffs James Nisbet and Kay Nisbet, his wife, are the owners of a residence on a lot purchased from the defendants, Billy Jarrell Watson and Nola Watson, his wife. The lot is situate in Sunset Addition to the Town of McConnell in Logan County which subdivision is owned by the defendants. Plaintiffs Frank Floyd and Jo Ann Floyd, his wife, likewise own a residence on a lot in said subdivision. The ultimate purpose of the actions in the trial court was to obtain a workable sewage system for their properties; also, the Floyds sought an injunction which will be discussed in greater detail.

Prior to the sale of these lots to the plaintiffs, the defendants, on July 7, 1969, executed and caused to be recorded in the office of the Clerk of the County Court of Logan County a certain instrument designated, "Declaration and Dedication of Protective Covenants of Sunset Addition to McConnell, Logan District, Logan County." (Hereinafter referred to as "Declaration and Dedication") This instrument, which ran in favor of any and all purchasers of lots in Sunset Addition, contained the following language:

> Whereas, it is the intention of the Watsons to provide a sewage system for the benefits of any and all purchasers and interest holders in the said property and whereas it is necessary that the Watsons will maintain and offer for the benefits of said property certain outlets and also,
>
> Whereas, it is the intention and desire of said Watsons to place against all of said realty certain protective covenants, in addition to those drafted June 12, 1969 ...
>
> Now therefore this deed, declaration and dedication is hereby made in consideration of the premises and in consideration of the sum of at least one dollar cash in hand paid to the Watsons by purchaser or purchasers of said lot or lots or interest as said realty is described on the map attached to the Deed of June 12, 1969. The Watsons, in consideration of the supra payment and the assumption of the cost and maintance [sic] of the sewage system to be installed on said property, do intend to place on said property an aerobic digestion sewage treatment plant of a sufficient size to provide sewage to the area described in the map attached. . . .
>
> It being the intention of the Watsons to sell and convey unto the property and interest holders in the said Sunset Addition ... this certain sewage system so that each of the individual home owners and property interest holders will assume the obligation of the maintance [sic] and repair of such sewage system so long as said property holders have an interest in said Sunset Addition.

> The purpose of this Declaration is to gradually pass the title to this certain sewage system to the home owners and property interest holders in said property, so that by the time the Watsons have sold all of the lots in said addition that they will no longer own any interest or have any obligation to maintain this certain sewage system . . .

On February 16, 1971 the defendants filed an application with the State Health Department seeking permission to construct a sewage treatment plant to service lots Nos. 1-7 in Sunset Addition. Upon inspection of the plans by the County and State Health Departments the defendants were advised of needed modifications in the proposed sewage system which would have to be made before the defendants could proceed with such construction. The defendants took no action in relation to the required modification.

The County Health Department, in 1974, learned of work being done in the subdivision and inquired about the sewage treatment plant. A second application for approval of the proposed sewage system was then prepared. This plan proposed service for lots Nos. 1-16. Upon inspection of this application, several deficiencies were noted and changes were required before the plan could be approved. Again, no action was taken by the defendants and in March, 1975 notice was served on the defendants that they were in violation of health department rules and regulations as they related to plaintiffs Floyd and Ellis, other residents of the subdivision. The Nisbets and the Fortners were likewise notified that their sewage systems did not meet the requirements of the aforesaid rules and regulations.

By reason of the inadequacies of the sewage system serving the subdivision, some of the residents thereof met for the purpose of forming an association. The express purpose of such association was to obtain an approved sewage system to serve all property owners in Sunset Addition. The formation of the association was never consummated but during the meetings it was

learned that the defendants had designed a sewage disposal plant that would serve only four houses in the subdivision.

Thereafter, on August 1, 1975, the plaintiffs, seeking a declaration and adjudication of their rights and duties and those of the defendants under the "Declaration and Dedication", filed an action for a declaratory judgment. The plaintiffs further requested that the defendants be required, at defendants' expense, to install an aerobic digestion sewage treatment plant of a sufficient size to provide adequate sewage treatment for each of the plaintiffs, pursuant to the various provisions of the "Declaration and Dedication."

Alleging that certain residents of the subdivision were not made parties to the action and that others had not authorized the use of their names therein the defendants moved to dismiss for failure to join indispensable parties. The court overruled that motion but required that notice be given to all property owners in the subdivision of the time and place of the hearing so that they could appear and protect their interests if they desired. In their answer the defendants admitted that the property owners were entitled to a sewage system when the "Dedication and Declaration" was recorded but that they were relieved of this obligation when they were denied by the state a permit to construct the system and the law was changed so that the proposed system could not be built in 1975. The defendants also claimed that the plaintiffs were estopped by reason of the alleged formation of the aforementioned association.

Prior to a decision in the declaratory judgment action, plaintiffs Floyd filed an action against the defendants alleging that they had failed to install a centralized aerobic digestion sewage treatment plant as covenanted in the "Dedication and Declaration". They sought a mandatory injunction to require the defendants to install such system and a temporary injunction, enjoining the defendants from preventing a plumber from going onto the Watson property which was necessary for the

purpose of repairing a clogged sewer line belonging to the Floyds.

By order entered December 22, 1975, the temporary injunction was granted and the order further provided that "this injunction shall remain in effect until January 13, 1976, at 11:00 o'clock a.m. when this matter will be further considered along with all other issues and relief sought in the plaintiffs' complaint." On January 10, 1976, three days before the scheduled hearing, the defendants conveyed to their two children for One Dollar cash "and other good and valuable consideration", certain properties including those involved in the declaratory judgment and injunction proceedings.

The court, upon consideration of the pleadings, testimony and exhibits, entered an order and an opinion, as a part thereof, which set out findings of fact and conclusions of law. The court concluded that the "Declaration and Dedication" obligates the defendants to install an aerobic digestion sewage treatment plant to service each lot in Sunset Addition owned by the plaintiffs; to install a water carried sewage treatment system to service the lots of the plaintiffs, the Floyds and the Ellises, and all those lots subdivided from the Persimmon Hollow Tract subsequent to July 1, 1970. Further, the court held "unsustainable" the defendants defenses of estoppel and frustration by the State in their efforts to obtain a sewage treatment plant to service said lots. Finally, the court found that the defendants' act of divesting themselves of the subject property was anticipatory resistance to the court's ultimate orders and constituted contempt of court. The defendants were ordered to restore to their possession the properties formerly conveyed to their son and daughter.

The defendants rely on the following assignments of error:

(1) The Circuit Court of Logan County erred by ordering the Petitioners to reacquire property from individuals not parties to the action;

(2) The Circuit Court erred by denying Defendants' motion to dismiss for failure to join indispensable parties;

(3) The Circuit Court erred by misconstruing the language of the Declaration and Dedication of Protective Covenants;

(4) The Circuit Court erred by misapplying the Law of Dedications;

(5) The Circuit Court erred by failing to find the Plaintiffs were estopped from claiming any protection of the Declaration and Dedication of Protective Covenants."

In relation to the first assignment of error, the defendants, relying on *W.Va. Code*, 1931, 55-13-11 contend that their son and daughter were indispensable parties to any action pertaining to land held by them. That section of the Code provides, in part, that "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

The order of the court requiring the defendants to reacquire the properties conveyed to their children was entered in relation to the injunction proceeding instituted by the Floyds (Civil Action No. 9339) not in the declaratory judgment action (Civil Action No. 9000), *W.Va. Code*, as amended, applying only to declaratory relief, is not applicable here and is of no assistance to the defendants. Furthermore, we agree with the trial court that the action of the defendants in conveying the subject properties to their children just three days prior to a final hearing on the injunction matter constituted anticipatory resistance of the court's ultimate order.

In their second assignment of error, contending that their motion to dismiss for failure to join indispensable parties, the defendants again rely on the above quoted language of *W.Va. Code*, 1931, 55-13-11, as amended. We hold that this assignment, too, is without merit. The defendants assert that all property owners in the sub-

division must be made parties and that that was not done in this instance.

Although there is authority which may support the defendants' position, we subscribe to what we believe to be the more enlightened view which does not require that all persons who might have an interest in the subject matter be made parties, so long as the judgment entered would have no prejudicial effect upon the rights of such persons. In the instant case we can perceive no manner in which the rights of the property owners who were not made parties could be prejudicially affected. The civil action called for a declaration of the rights of property owners in the subdivisions, all of whom were included in the "Declaration and Dedication". The only effect of a judgment in favor of the plaintiffs would be to construct a sewage system for all properties.

Of further significance is the fact that the court ordered that all property owners be notified of the pending action. This notice afforded them an opportunity to be heard should they believe that their rights would be adversely affected. Also, such notice would meet the requirements of *Maynard v. Shein*, 83 W. Va. 508, 98 S.E. 618 (1919), wherein the Court said: "It is contrary to the policy of our law that the rights of parties should be materially affected or be entirely destroyed without giving them an opportunity to be heard." See *Hardwick v. Liberty Mutual Ins. Co.*, 243 S.C. 162, 133 S.E.2d 71 (1963).

In *Robertson v. Hatcher*, 148 W. Va. 239, 135 S.E.2d 675 (1964), an appeal in a declaratory judgment proceeding, the Court said "The rights and interests of the persons about whose absence the defendants complain are fully protected." We believe that the rights and interests of all of the property owners in Sunset Addition have been fully protected and that no necessary or indispensable party was proceeded against without notice. Furthermore, the court's order granted relief only to the plaintiffs.

The trial court found that the "Declaration and Dedication" placed an obligation on the defendants to "install an aerobic digestion sewage treatment plant to service each of the lots in Sunset Addition owned by the plaintiffs herein." This, asserts the defendants, reflects a misconstruction of the "Declaration and Dedication" by the court. We disagree.

It is undisputed that such instrument was prepared by the defendants. It clearly provides that "it is the intention of the Watsons [defendants] to provide a sewage system for the benefits of any and all purchasers and interest holders in the said property ... The purpose of this Declaration is to gradually pass the title to this certain sewage system to the home owners ... so that by the time the Watsons have sold all of the lots in said addition that they will no longer own any interest or have any obligation to maintain this certain sewage system ..."

It appears clear to us that the plain language of the "Declaration and Dedication" obligates the defendants to construct and maintain a sewage system for the benefit of all purchasers of property in Sunset Addition. This Court has consistently held that the language of a contract must be accorded its plain meaning and, where plain, the language must be given full effect. *See Stone v. National Surety Corporation,* 147 W. Va. 83, 125 S.E.2d 618 (1962); *Christopher v. United States Life Insurance Company,* 145 W. Va. 707, 116 S.E.2d 864 (1960); *Davis v. Combined Insurance Company of America,* 137 W. Va. 196, 70 S.E.2d 814 (1952); and, *Mitchell v. Metropolitan Life Insurance Co.,* 124 W. Va. 20, 18 S.E.2d 803 (1942). It is also well settled that any ambiguity in a contract must be resolved against the party who prepared it. *Stone v. National Surety Corporation, supra; Bergholm v. Peoria Life Ins. Co.,* 284 U.S. 489, 52 S. Ct. 230, 76 L. Ed. 416 (1932). *Stipcich v. Insurance Co.,* 277 U.S. 311, 48 S. Ct. 512, 72 L. Ed. 895 (1928); *Correct Piping Co. v. City of Elkins,* 308 F. Supp. 431 (N.D. W. Va. 1970).

In a further assignment of error the appellants assert that the court misapplied the law of dedication. They

argue that "To constitute a valid dedication there must not only be an intention on the part of the owner, but it is absolutely essential that there be an acceptance expressed or implied on the part of the public." Cited in their brief are a number of cases dealing with public highways. Those cases are not applicable here. However, as above noted, the language of the subject instrument clearly shows an intention on the part of the owner to furnish a sewage system to the purchasers of lots in the subdivision; and an acceptance thereof by such purchasers when they accepted the deeds with the "Dedication and Declaration" included as a part thereof.

In their final assignment of error the appellants contend that the appellees are estopped from claiming any protection from the "Declaration and Dedication". The trial court found and held that the defense of estoppel was unsustainable, there having been a failure to prove any act or conduct on the part of the plaintiffs upon which the defendants relied to their detriment. We affirm the court's holding. The alleged agreement of April 17, 1975 was never consummated, having been signed by only a few of the lot owners and not having been signed by Billy J. Watson, one of the defendants. Certainly, if he did not enter into the agreement, it does not comport with reason that he relied upon it to the defendants' detriment. *Helmick v. Broll*, 150 W. Va. 285, 144 S.E.2d 779 (1965).

For the reasons stated herein the judgment of the Circuit Court of Logan County is affirmed.

*Affirmed.*