408 S.E.2d 358

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Corporation and Insurer of Harry Green Chevrolet, Inc., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**Carl TAYLOR, Defendant Below, Appellee,**

and

**Robert J. Beafore, as Administrator of the Estate of Robert F. Beafore, and Robert J. Beafore, In his Individual Capacity, Intervenor Below, Appellant.**

**No. 19842.**

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 26, 1991.

Rehearing Denied Sept. 5, 1991.

Arden J. Curry II, Charleston, for appellee.

Ross Maruka, Rocco S. Fucillo, Fairmont, for appellant.

WORKMAN, Justice:

■ Robert J. Beafore, as administrator of the estate of Robert F. Beafore and as an individual, appeals from a final order of the Circuit Court of Marion County entered in favor of appellee Universal Underwriters Insurance Company ("Universal"). In the ruling at issue, the circuit court determined that the insurance policy issued by Universal to Harry Green Chevrolet, Inc. ("Harry Green") does not provide coverage to an individual who obtained permission to remove a vehicle from the dealership premises, failed to return the vehicle per the dealer's instructions, and subsequently was involved in an automobile accident while driving the dealership's vehicle. Our review of the omnibus clause set forth in W.Va.Code § 33–6–31(a) (Supp.1991) in conjunction with applicable case law compels us to conclude that the circuit court erred in determining that Universal did not have a duty to provide insurance coverage under these facts.

On November 22, 1986, Carl Taylor entered the premises of Harry Green in Clarksburg, West Virginia, for the ostensi-

ble purpose of purchasing an automobile. Mr. Taylor requested permission from a salesperson to take a black 1986 camero to the residence of a friend to ask if she approved of the vehicle prior to his purchase of it. The salesperson gave Mr. Taylor permission to take the vehicle at approximately 12:20 p.m., but informed Mr. Taylor that the vehicle was to be returned no later than 1:00 p.m. that same day.

When Mr. Taylor failed to return the vehicle to Harry Green at the appointed hour, Harry Green notified the West Virginia State Police between 3:00 p.m. and 3:30 p.m. that Mr. Taylor had stolen the camero. On December 7, 1986, sixteen days after Mr. Taylor had initially driven away from Harry Green in the dealership's vehicle, Mr. Taylor was involved in an automobile accident which resulted in the death of Robert F. Beafore.

On August 2, 1988, Robert J. Beafore brought suit against Mr. Taylor and Harry Green in the Circuit Court of Marion County, West Virginia, as administrator of the estate of Robert F. Beafore. That civil action was predicated on two counts of negligence: (1) Mr. Taylor was negligent in causing the death of Robert F. Beafore; and (2) Harry Green was negligent in allowing Mr. Taylor to steal its vehicle. Harry Green ultimately settled the negligence claim filed against it for the sum of $250,000 and Robert J. Beafore proceeded to trial against Mr. Taylor.

At the time Mr. Taylor stole the vehicle from Harry Green, the dealership was insured by a policy issued by Universal. Universal filed a declaratory judgment action in the Circuit Court of Marion County, West Virginia, against Mr. Taylor to resolve whether it owed coverage to Mr. Taylor under the policy. On January 18, 1990, the circuit court entered an order in favor of Universal, finding that the insurance policy Universal issued to Harry Green did not provide coverage to an individual who stole a vehicle from its insured. It is the circuit court's decision in the declaratory judgment action regarding lack of coverage that forms the basis for this appeal.

The sole question on appeal is whether Universal has a duty to provide coverage to Mr. Taylor under the policy which it issued to Harry Green. Appellant urges this Court to find coverage pursuant to the mandatory omnibus clause adopted by this state in 1967. The omnibus clause requires that all motor vehicle insurance policies

shall contain a provision insuring the named insured and any other person, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy, responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his spouse against liability for death or bodily injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person: Provided, That in any such automobile liability insurance policy or contract, or endorsement thereto, if coverage resulting from the use of a non-owned automobile is conditioned upon the consent of the owner of such motor vehicle, the word 'owner' shall be construed to include the custodian of such non-owned motor vehicles.

W.Va.Code § 33–6–31(a) (Supp.1991).

The purpose of an omnibus clause in an automobile insurance policy, as this Court recognized in syllabus point 1 of *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 154 W.Va. 448, 175 S.E.2d 478 (1970), is "to extend coverage, in proper circumstances, to any person using the insured vehicle, and to afford greater protection to the public generally...." Consistent with that purpose, we have recognized that the omnibus clause "is remedial in nature and must be construed liberally so as to provide insurance coverage where possible." *Burr v. Nationwide Mut. Ins. Co.*, 178 W.Va. 398, 359 S.E.2d 626, 632 (1987); *see generally* 7 Am.Jur.2d *Automobile Insurance* § 248 (1980) (recognizing liberalizing purpose of omnibus clause as protecting "any person injured ... by giving him a cause of action against the insurer for injuries deemed by

law to have been caused by the operation of the car").

Universal contends that, notwithstanding the state motor vehicle omnibus clause, the policy definition of an insured excepts Mr. Taylor from any category of individuals to which it owes coverage. The policy definition upon which Universal relies to support its position defines an insured with respect to an auto hazard[1] as "[a]ny other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission." Universal maintains that Mr. Taylor's use of the vehicle at the time of the accident was outside the scope of the insured's permission based on his failure to return the vehicle by 1:00 p.m. on the same date on which he test-drove it, as the salesperson had directed. Relying solely on the policy language which conditions coverage on permission, appellee argues that coverage is precluded.

Issues of coverage involving application of an omnibus clause are resolved pursuant to one of three judicially-created tests. *See* Annotation, *Automobile Liability Insurance: Permission or Consent to Employee's Use of Car Within Meaning of Omnibus Coverage Clause*, 5 A.L.R.2d 600, 626–43 (1949 and Later Case Service 1985) (recognizing three theories for interpreting omnibus clauses: (1) the strict or conversion rule which requires use precisely within scope of permission granted, (2) the "minor deviation" rule, and (3) the liberal or "initial permission" rule); *see also* 6C J. Appleman, *Insurance Law and Practice* §§ 4366–4368 (1979 & Supp.1990). In this case, appellant advances the use of the "initial permission" rule whereas Universal

argues that the "minor deviation" rule controls. Under the liberal or "initial permission" rule,

> the bailee need only have received permission in the first instance, and any use while it remains in his possession is with permission though that use is for a purpose not contemplated by the bailor when he parted with possession of the vehicle. In other words, if the original taking was with the insured's consent, every act subsequent thereto while the bailee is driving the car is held to be with the insured's permission in order to permit a recovery under the omnibus clause. Under this rule a deviation from the permitted use is immaterial, the only essential thing being that permission be given for use in the first instance.

7 Am.Jur.2d, *supra*, at § 265 (footnote omitted).

The "minor deviation" rule provides that "if the use made by an employee or other bailee is not such a gross violation, even though it may have amounted to a deviation, protection is still afforded to the bailee under the omnibus clause." *Id.* at § 266. Application of the "minor deviation" theory has resulted in a denial of coverage when the operator of the vehicle violates instructions regarding (1) the time of operation; (2) the purpose of the operation; (3) the route the vehicle is to be driven; and (4) the person who is to operate the vehicle. *See, e.g., Aetna Casualty & Sur. Co. v. Anderson*, 200 Va. 385, 105 S.E.2d 869 (1958).

Universal argues that Mr. Taylor not only committed a "minor deviation" but in fact deviated grossly (1) from the extent or

---

**1.** "Auto Hazard" is defined within the garage operations clause of the policy to mean

the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:
(1) used for the purpose of GARAGE OPERATIONS or
(2) used principally in GARAGE OPERATIONS with occasional use for other business or non-business purposes or
(3) furnished for the use of any person or organization.
This Court previously determined in syllabus point three of *State Farm Mutual Automobile*

*Insurance v. Universal Underwriters Insurance Co.*, 181 W.Va. 609, 383 S.E.2d 791 (1989), that
[a] dealership's garage owner's policy, which defines an additional insured as any other person required by law to be an insured while using an automobile within the scope of the dealership's permission, covers a driver who has been permitted to use an automobile owned by the dealership. This is by virtue of the mandatory omnibus clause requirements of W.Va.Code, 17D–4–12(a), and W.Va.Code, 33–6–31(a).

scope of the initial permission; (2) as to the distance he was authorized to travel; (3) from the time limits of the initial permission; and (4) from the purpose of the initial permission. Appellee further argues that this Court in *Collins v. New York Casualty Co.*, 140 W.Va. 1, 82 S.E.2d 288 (1954), specifically adopted the "minor deviation" standard and explicitly rejected the "initial permission" rule.

To support its position that West Virginia is an "initial permission" jurisdiction in operation, if not at law, appellant argues that once the omnibus clause was enacted in 1967, this Court's holding in *Collins* was no longer valid. Appellant argues that states that have a statutory insurance scheme similar to West Virginia, referring to the combination of an omnibus statute and a mandatory insurance statute,[2] have been determined to be "initial permission" jurisdictions. Appellant further maintains that the circuit court's ruling runs counter to this state's public policy of requiring mandatory insurance coverage to make the owners of automobiles financially responsible for damages caused by their automobiles. Finally, appellant asserts that this Court has implicitly adopted the "initial permission" rule in recent decisions by virtue of its repeated recognition of the liberalizing purpose of omnibus clauses.

In *Allstate Insurance Co. v. Jensen*, 109 N.M. 584, 788 P.2d 340 (1990), the New Mexico Supreme Court squarely addressed the issue facing this Court: whether the enactment of an omnibus clause renders the state an "initial permission" jurisdiction which in turn requires an insurer to "provide coverage to any person using the insured vehicle with the owner's consent,

without regard to any restrictions or understanding between the parties on the particular use for which the permission was given." *Id.* at 587, 788 P.2d at 343. Like West Virginia, New Mexico has in effect as a part of its Mandatory Financial Responsibility Act the standard omnibus language which requires that all motor vehicle liability policies "insure the person named in the policy and any other person, as insured, using any such motor vehicle with the express or implied permission of the named insured."[3] N.M.Stat.Ann. § 66–5–221(A)(2) (1978); *see* W.Va.Code § 17D–4–12(b)(2).

The insurance policy at issue in the *Jensen* case, similar to the Harry Green policy, contained language which provided coverage in addition to the named insured to "'[a]ny other person with respect to the owned automobile, provided the use thereof is with the permission of the insured and within the scope of that permission.'" 788 P.2d at 341. Just as in this case, the insurer in *Jensen* sought to obtain a declaratory judgment ruling that the driver of the insured's vehicle was not a permissive driver within the meaning of the policy's omnibus clause based on the driver's excessive deviation from his announced purpose for using the vehicle.[4] *Id.*

Recognizing that a "contract for liability insurance cannot be more restrictive than the statutory clause," the *Jensen* court articulated the following conflict between the New Mexico omnibus clause and the Allstate insurance policy provision: "While the Allstate policy clearly indicates that permission to use the vehicle is defined by the particular use being made of it at the time of the accident, we do not believe that

---

**2.** *See* W.Va.Code § 17D–4–12 (1991).

**3.** West Virginia's comparable statutory language is found in W.Va.Code § 17D–4–12(b)(2), as part of the Motor Vehicle Safety Responsibility Law, and it reads, in pertinent part, that all motor vehicle liability policies

> [s]hall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, opera-

tion, maintenance or use of such vehicle or vehicles. . . .

**4.** The driver in *Jensen* requested use of a fellow construction worker's pickup truck purportedly for the purpose of driving to a nearby convenience store to purchase cigarettes. After receiving permission to use the truck, the driver headed in the opposite direction from the store and became involved in a high speed chase with state and local police which resulted in the destruction of two police vehicles. 788 P.2d at 340–41.

the statutory provision is so qualified." 788 P.2d at 342–43. To resolve this conflict, the New Mexico court looked to the statement of legislative purpose accompanying the state's Mandatory Financial Responsibility Act:

> The purpose of the Mandatory Financial Responsibility Act is to require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. *It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.*

*Id.* (quoting N.M.Stat.Ann. § 66–5–201.1 (1978) and emphasis supplied).

Based upon its conclusion that mandatory automobile liability insurance "is for the benefit of the public generally, innocent victims of automobile accidents, as well as the insured[,]" the *Jensen* court ruled that

> [a]n owner may certainly impose restrictions on the particular use of a loaned vehicle, and we do not mean to discourage such agreements between individuals. However, we do not believe the legislature intended that the owner's liability coverage for the motor vehicle be affected by such understandings.
>
> ... [w]e conclude that the omnibus clause of the Allstate liability policy must provide coverage to any person using the insured vehicle with the owner's consent, without regard to any restrictions or understanding between the parties on the particular use to which the permission was given.
>
> We wish to emphasize that we construe Section 66–5–221(A)(2) to adopt what may be called the initial permission rule because we believe the legislature intended to accomplish this result.

788 P.2d at 343.

We find the reasoning employed by the court in *Jensen* both instructive and persuasive on the issue of what we will refer to as the "legislative" enactment of the "initial permission" rule. Like the New Mexico court, we find a conflict between the policy provision which attempts to limit coverage for additional insureds based on whether the driver was within the scope of permitted use at the time of the accident. Continuing the *Jensen* analysis, this Court has also recognized that "[a]ny provision in an insurance policy which attempts to contravene W.Va.Code, 33–6–31(a) is of no effect." Syl. Pt. 2, *Burr*, 178 W.Va. at 398, 359 S.E.2d 626. Accordingly, if we determine that West Virginia is an "initial permission" jurisdiction based on the legislative intent underlying the omnibus clause, as did the *Jensen* court with regard to the New Mexico statute, then the policy provision at issue which conditions coverage for additional insureds on the scope of permission is unenforceable because it alters by contract what is intended by the statute.

In contrast to the New Mexico statute, we do not have a statement of legislative intent incorporated into either of the omnibus statutes. *See* W.Va.Code §§ 33–6–31(a), 17D–4–12(b)(2). The absence of such a statement, however, does not preclude application of the *Jensen* rationale because the legislative intent underlying enactment of omnibus statutes can arguably be said to be universal in nature. Moreover, this Court has had the opportunity previously to comment on the legislative intent underlying the motor vehicle omnibus clause and made the following observation:

> The mandatory omnibus requirements imposed by W.Va.Code, 33–6–31(a), indicate that the legislature has demonstrated a clear intent to afford coverage to anyone using a vehicle with the owner's permission as a means of giving greater protection to those who are involved in automobile accidents. The statute should be liberally construed to effect coverage.

Syl.Pt. 3, *Burr*, 178 W.Va. at 398, 359 S.E.2d 626.

Having concluded that the legislature's enactment of the omnibus clause evinces an unmistakable intent to maximize insurance coverage for the greater protection of the public and that effectuation of such intent requires a broad interpretation

of the statute, it necessarily follows that the "initial permission" rule rather than the "minor deviation" rule best comports with and aids in the accomplishment of this "policy of liberalizing coverage." *Id.* 178 W.Va. at 404, 359 S.E.2d at 632. We concur with the New Jersey Supreme Court in *Matits v. Nationwide Mutual Insurance Co.*, 33 N.J. 488, 166 A.2d 345 (1960), that the "conversion" and "minor deviation"

> rules making coverage turn on the scope of permission given in the first instance render coverage uncertain in many cases, foster litigation as to the existence or extent of any alleged deviations, and ultimately inhibit achievement of the legislative goal. *We think that the 'initial permission' rule best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause automobile liability insurance policies.*

*Id.* at 496, 166 A.2d at 349 (emphasis supplied). Adoption of the "initial permission" rule as the controlling standard furthers the "important policy ... of assuring that all persons wrongfully injured have financially responsible persons to look to for damages." *Odolecki v. Hartford Accident & Indem. Co.*, 55 N.J. 542, 549, 264 A.2d 38, 42 (1970) (citation omitted). Based on our recognition that "a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured....," we hereby determine that the state motor vehicle omnibus clause requires an insurer to provide coverage when permission has been granted by the insured owner of the vehicle or its authorized agent to a driver who then causes injury or property damage during the permissive use. Given the remedial nature of the omnibus clause, insurance coverage is not affected by the fact that the driver's use of the vehicle may have exceeded or differed from the owner's or his agent's specifications. *Id.* We hereby overrule our previous decision in *Collins* to the extent that *Collins* designated West Virginia as a "minor deviation" rule state.

Unlike the insurance policy provision, neither of the omnibus statutes attempt to limit coverage based on the scope of permission. Since use, rather than scope of permission is the only relevant factor in this Court's interpretation of the omnibus statute, the policy provision must be viewed as contravening W.Va.Code § 33-6-31(a) and is therefore unenforceable under this Court's holding in *Burr*. *See* 178 W.Va. at 398, 359 S.E.2d at 626; *cf. Jordan v. Consolidated Mut. Ins. Co.*, 59 Cal. App.3d 26, 130 Cal.Rptr. 446 (1976) (only after California legislature amended its omnibus clause such that use of the insured vehicle must be within scope of permission was coverage effected by parameters of restricted use). Although vehicle owners may certainly place restrictions on the use of their vehicles, we agree with the *Jensen* court that the legislature, by its enactment of the omnibus clauses, did not intend that the owner's liability coverage be affected by such restrictions. To suggest otherwise would clearly defeat the purpose of an omnibus clause and would invite a swearing contest regarding the existence of any purported restriction and its terms.

■ Universal argues alternatively that even if this state chooses to adopt the "initial permission" rule, Mr. Taylor's theft of the vehicle from Harry Green vitiates the permission granted by the dealership. Several courts that have adopted the "initial permission" rule have implemented a limitation which annuls coverage in cases of theft or the like. *See Matits*, 166 A.2d at 349 (following granting of permissive use of vehicle, "any subsequent use short of theft or the like while it remains in his possession, ... is a permissive use"); *accord Milbank Mut. Ins. Co. v. United States Fidelity and Guar. Co.*, 332 N.W.2d 160, 167 (Minn.1983). The cases adopting this "theft or the like" limitation have not expanded on the issue of whether theft by a permittee falls within this exception. Looking to the *Matits* language which refers to a theft which occurs while the insured vehicle is in the permittee's possession and the court's explanatory comment in *Commercial Union Insurance Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988), where it stated that "we agree that

an insurer should not be liable to a thief or a person who has no permission to use a vehicle and who converts it to his or her own use," we do not believe the theft exception applies to the facts of this case. *Johnson*, 745 S.W.2d at 594.

In this Court's opinion, the *Matits* court's intention was to protect the insurer from liability that arose from a theft occurring while the insured's vehicle was in the permittee's possession, but not a theft *by* the permittee. *See* 166 A.2d at 349. As the *Johnson* court suggested, the key to activating the exception is "a person who has no permission to use a vehicle." 745 S.W.2d at 594. Consistent with our rationale in declaring West Virginia an "initial permission" jurisdiction, we believe that because Harry Green did in fact voluntarily turn over the keys to its vehicle to Mr. Taylor, even a subsequent act of theft by Mr. Taylor does not vitiate that permission. If the legislature of this state wishes to amend the omnibus language found in W.Va.Code §§ 33–6–31(a) and 17D–4–12(b)(2) to except coverage under these facts, it of course may do so. However, as the language in both omnibus clauses clearly conditions coverage on use of the insured vehicle, we find it necessary to require coverage based on the initial permission granted by Harry Green to Mr. Taylor. Mr. Taylor's subsequent acts, which evidence an intent to steal the vehicle, have no bearing, in this Court's opinion, on the issue of coverage in an "initial permission" jurisdiction. *But see Jensen*, 788 P.2d at 344–45 (holding that wrongful intent to deprive owner of insured vehicle bars coverage).

■ One final argument advanced by Universal is that because Mr. Taylor provided the Harry Green salesperson with a false name, occupation, and address, the permission granted by the dealer to Mr. Taylor should be determined to be void. *See Federal Kemper Ins. Co. v. Neary*, 366 Pa.Super. 135, 530 A.2d 929 (1987) (permission held void where unlicensed minor fraudulently misrepresented his age and existence of valid learner's permit to obtain permission to operate motor vehicle). We do not accept this argument because the record does not indicate that the salesperson relied on the name or personal history

provided by Mr. Taylor in granting him permission to test-drive the dealership's vehicle. Had the salesperson requested that Mr. Taylor exhibit a valid driver's license as proof of his identity and as proof of his entitlement to legally operate a motor vehicle and Mr. Taylor had tendered false identification or an invalid operator's license, then Universal's argument on this issue might be more convincing. In this Court's opinion, the salesperson's decision to grant Mr. Taylor permission to test-drive a vehicle was motivated by his desire to sell a vehicle and not by any reliance on whatever personal information Mr. Taylor provided. Certainly an automobile dealer may take a number of steps to protect itself from an occurrence such as that which resulted in this case. As we suggested, the salesperson can be instructed to request proof of identity as well as inspection of an operator's license. Even more obvious, however, is that the salesperson can be required to accompany potential buyers on their test-drives. In this case, Harry Green and its agents did nothing to prevent the events which transpired and the death of an innocent third party was the result.

Based on the foregoing, we hereby reverse the decision of the Circuit Court of Marion County.

Reversed.