465 S.E.2d 901

**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, Plaintiff Below, Appellee,**

v.

**Orval ACORD, Sr., Defendant Below, Appellant.**

No. 22851.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Dec. 8, 1995.

---

446

E. Kent Hellems, Gorman, Sheatsley & Company, L.C., Beckley, for Appellant.

Anita R. Casey and Renatha S. Garner, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for Appellee.

WORKMAN, Justice:

This case is before the Court upon the appeal of Orval Acord, Sr., from the October 24, 1994, final order of the Circuit Court of Raleigh County, which granted the Appellee, Metropolitan Property and Liability Insurance Company's (hereinafter "Metropolitan") motion for summary judgment and denied the Appellant's motion to join indispensable parties. The Appellant argues that the circuit court erred in finding: 1) that liability coverage afforded by the Metropolitan policy was not available to the Appellant; 2) that uninsured coverage under the same policy was not available to the Appellant; and 3) that the Appellee did not have to join certain persons [1] as indispensable parties to the declaratory judgment action. Having reviewed the record, the parties' briefs, and all other matters submitted before this Court, we find that the lower court committed no error and, accordingly, affirm.

## I.

This action arose as a result of a single car accident which occurred on July 31, 1993, in Fayette County, West Virginia. The Appellant owned and was the named insured of the vehicle involved in the accident. The Appellant's son was a passenger in the vehicle, which was being driven by Scott Stephen Allen.[2] The Appellant's son was killed as a result of the accident.

1. The parties in question were Scott Stephen Allen, who was driving the automobile at the time of the accident, and the estate of Orval Acord, Jr.

2. Criminal proceedings against Mr. Allen on the charge of DUI resulting in death confirmed that he was the driver of the vehicle at the time of the accident. According to Mr. Allen's statement to the investigating officer, prior to the accident, Mr. Allen met Orval Acord, Jr., at the Velvet Lounge where Orval Acord, Jr., was attempting to purchase a six-pack of beer. Orval Acord, Jr., invited Mr. Allen to ride with him to Bluefield, West Virginia. It is unclear from the record when Mr. Allen became the driver of the car.

Metropolitan, as the Appellant's insurer,[3] was notified about the accident and death of Orval Acord, Jr. Metropolitan proceeded to investigate the claim. The investigation revealed that Orval Acord, Jr., was thirty-six years old and was a resident of his parent's home at the time of the accident.[4] Further, Orval Acord, Jr., did not have a key or his parents' permission to use the vehicle involved in the accident. Additionally, Orval Acord, Sr., told the Appellee that he had not given permission to his son to operate the vehicle which was involved in the accident, because his son did not have an operator's license and had a drinking problem. Mrs. Acord confirmed her husband's statement that neither of them had given permission to their son, stating that she and her husband had given their son strict instructions not to drive their vehicle. Likewise, neither of the Acords had given permission to Mr. Allen to operate their vehicle. Further, both Acords confirmed that their son had taken the vehicle on the day in question without their knowledge or consent. As a matter of fact, Mr. Acord specifically stated that while he was asleep, his son took the keys to the vehicle from his pants pocket and stole the car. Finally, Mr. and Mrs. Acord agreed that prior to the accident, their son had never asked to use the vehicle or made any attempt to take the keys to the vehicle.

Based upon evidence obtained from Metropolitan's investigation, the Appellant's claim on behalf of the estate of Orval Acord, Jr., for liability coverage was denied. Metropolitan also denied the Appellant's claim for uninsured insurance coverage, maintaining that under the terms of the policy, such coverage was not available for injuries sustained by an insured while riding in an automobile "regularly furnished or available for the use of" the named insured or any of his relatives.

Metropolitan filed a declaratory judgment action against its named insured, Orval Acord, Sr., in an effort to obtain a judicial determination of its obligations under the insurance policy.[5] Following discovery, Metropolitan filed a motion for summary judgment on the liability and uninsured insurance coverage issues. The Appellant filed a motion to join the estate of Orval Acord, Jr., and Mr. Allen as indispensable parties to the declaratory judgment action. The circuit court granted the Appellee's motion for summary judgment and denied the Appellant's motion to join the additional parties.

## II.

The first issue before the Court is whether liability coverage is available for the Appellant's son's death. The Appellant maintains that Metropolitan denied coverage because Mr. Allen was not a permissive user of the car pursuant to the terms and definitions of the policy, since he failed to obtain the Appellant's, the named insured's, permission prior to using the Appellant's automobile. In denying coverage under this rationale, the Appellant asserts that both Metropolitan and the circuit court ignored the language of West Virginia Code § 33–6–31(a) (1992).[6]

---

3. Prior to the accident, Metropolitan had issued to Orval Acord, Sr., an automobile liability insurance policy on the vehicle involved in the accident, with liability limits of $50,000 per person and $100,000 per occurrence. This policy also provided uninsured and underinsurance motorist coverages, each with limits of 20,000 per person and $40,000 per occurrence. The medical payments coverage was limited to $1000 per person.

4. Even though the investigation revealed that Orval Acord, Jr., was a resident, the evidence also indicated that he lived in the basement portion of the house, with his own separate entrance. Moreover, he did not have a key to the main house where his parents resided.

5. According to the Appellee's brief, notice of the litigation was forwarded to Mr. Allen at two different addresses by certified mail; however, said notices were returned as undeliverable.

6. West Virginia Code §§ 33–6–31(a) provides, in pertinent part, that:

(a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership ... or use of any motor vehicle, shall be issued or delivered in this state to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the department of

The Appellant contends that since Orval Acord, Jr., was an insured by definition under the Appellee's policy,[7] he could have operated the automobile in question without the permission (express or implied) of the named insured and been covered under the policy. Further, the Appellant argues that since Orval Acord, Jr., met the insurance policy definition of an insured, he was certainly a custodian of the automobile as contemplated by West Virginia Code § 33–6–31(a)[8] and, therefore, the authority he provided to Mr. Allen to operate the automobile was sufficient to activate the liability insurance coverage for this occurrence. In contrast, the Appellee maintains that liability coverage was not available under the terms of the policy, because the driver, Mr. Allen, was not "[a]ny other **person** using it [the covered automobile] within the scope of **your** [the named insured or the named insured's spouse if a resident of the same household] permission," as required by the policy. Moreover, the Appellee asserts that Orval Acord, Jr., could not give permission to anyone else to drive the car, since he was neither a named insured nor the spouse thereof. Further, the Appellee asserts that the circuit court did not disregard the provisions of West Virginia Code § 33–6–31(a), because the relevant statutory language relied upon by the Appellant applies to the use of a nonowned automobile, and the vehicle involved in the accident was not a nonowned vehicle, but rather was clearly owned by the Appellant.

In ascertaining whether liability coverage is available, it is first necessary to examine the relevant policy language. Under the Metropolitan policy terms, the liability section defines those persons who are deemed to be insureds for the purposes of liability coverage as follows: "**We** will pay **damages** for **bodily injury** and **property damage** to others for which the law holds an **insured** responsible because of an **occurrence** which results from the ownership, maintenance or use of a **covered automobile** or a **non-owned automobile**." (some emphasis added). Moreover, under Section VI of the policy, entitled "**GENERAL DEFINITIONS**," an insured is defined as follows:

(a) with respect to a **covered automobile**:[9]

i. **You**; or

ii. Any **relative**; or

iii. Any other **person** using it within the scope of **your** permission; . . .

Additionally, "you" "mean[s] the **person** or **persons** named in the Declarations of this policy as named insured and the spouse of such **person** or **persons** if a resident of the same household." The term "relative" is also defined, in pertinent part, as "a **person** related to **you** by blood . . . and who also resides in **your** household."

motor vehicles of this state, unless it shall contain a provision insuring the named insured and any other person, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy, responsible for the use of or using the motor vehicle with the consent, express or implied, of the named insured or his spouse against liability for death or bodily injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person: *Provided, That in any such automobile liability insurance policy or contract, or endorsement thereto, if coverage resulting from the use of a non-owned automobile is conditioned upon the consent of the owner of such motor vehicle, the word 'owner' shall be construed to include the custodian of such non-owned motor vehicles.*

*Id.* (emphasis added). We note that West Virginia Code § 33–6–31(a) was amended in 1995; however, the amendments do not affect the outcome of this case.

7. It is undisputed by both parties that by virtue of being a resident relative, Orval Acord, Jr., was an insured under the Appellant's Metropolitan policy.

8. *See supra* note 6.

9. A "covered automobile" is defined as "an eligible **private passenger automobile** . . . owned by **you** . . . and described in the Declarations, but only with respect to coverage for which a specific premium is charged."

■ We have never interpreted the above-mentioned automobile insurance policy language for the purposes of determining whether liability coverage will be extended where an insured, other than the named insured under of the terms of the policy, gives permission to another to drive the covered automobile.[10] However, West Virginia Code § 33–6–31(a) contemplates that the named insured must give express or implied permission to the person utilizing his vehicle. This is reflected in the following pertinent statutory language:

> (a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership ... or use of any motor vehicle, shall be issued or delivered in this state to the owner of such vehicle ... unless it shall contain a provision insuring the named insured *and any other person ... responsible for the use of or using the motor vehicle with the consent, express or implied, of the named insured or his spouse* against liability for death or bodily injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person....

*Id.* (emphasis added).

Moreover, we have previously interpreted the above-referenced statute in *Universal Underwriters Ins. Co. v. Taylor,* 185 W.Va. 606, 408 S.E.2d 358 (1991). In *Taylor,* the named insured was an automobile dealership. The permission given the driver of the vehicle, which was ultimately involved in an accident, was given by the named insured's sales agent, who had clear authority to consent to use of the vehicle by the driver on behalf of the named insured dealership. *Id.* at 607–08, 408 S.E.2d at 359–60. The issue before us in *Taylor,* was whether there was liability coverage for the driver under the named insured's policy arising from a motor vehicle accident which had occurred while the driver was using the vehicle beyond the scope of the permission initially given him by the sales agent.[11] *Id.* at 608, 408 S.E.2d at 360.

■ We held that there was liability coverage under the dealership's policy, holding that "the state motor vehicle omnibus clause [, W.Va.Code § 33–6–31(a) (Supp.1991),] requires an insurer to provide coverage *when permission has been granted by the insured owner of the vehicle or its authorized agent* to a driver who then causes injury or property damage during the permissive use." 185 W.Va. at 612, 408 S.E.2d at 364 and Syl.Pt. 4, in part. (emphasis added). Explicit in this holding was the precept that where permission to drive the vehicle was granted by the insured owner or authorized agent of that insured owner, an insurer was required to provide coverage.

Likewise, other courts, in interpreting omnibus clause provisions in their respective state statutes, similar to that contained within West Virginia Code § 33–6–31(a), have indicated that the initial permission given to the driver at issue must have originated from the named insured and not merely any insured under the policy provisions. For instance, in *Vicente,* the Supreme Court of Hawaii stated that under Hawaii's omnibus clause provisions, "[the driver] is a 'covered person,' if he was using the insured vehicle

---

10. Other jurisdictions, however, have unequivocally held that

> [t]o have coverage ... the driver of the vehicle must have the permission of the *named insured.* Permission of the named insured may be implied, depending on the facts and circumstances of the particular case. The question of implied permission is determined by whether it was reasonably foreseeable that the first permittee would allow someone else to drive the automobile.

*Perkins v. McDow,* 615 So.2d 312, 315–16 (La. 1993) (citation omitted); *see also AIG Hawai'i*

*Ins. Co. v. Vicente,* 78 Hawai'i 249, 891 P.2d 1041, 1043 (1995) (stating that omnibus clause of policy provides that covered person includes any person using named insured's covered automobile with named insured's permission).

11. In *Taylor,* the driver initially received permission to test drive the automobile for a period of 40 minutes. Rather than returning the automobile at the end of this time, the driver kept the automobile and the accident occurred 16 days later. 185 W.Va. at 608, 408 S.E.2d at 360.

with either the express or implied permission of . . . [the named insured]." 891 P.2d at 1043; *see also American Country Ins. Co. v. Wilcoxon,* 127 Ill.2d 230, 130 Ill.Dec. 217, 221, 537 N.E.2d 284, 288 (1989) (stating that "[a]n omnibus clause concerning those covered by driving an insured's car may equally well be expressed as, 'those driving the car with the "permission of the *named insured* " ' ") (emphasis added); *United Servs. Auto. Ass'n v. National Farmers Union Property and Casualty,* 119 N.M. 397, 891 P.2d 538, 540 (1995) (stating that coverage under omnibus clause extends to any subsequent permittee operating insured vehicle as long as *named insured* has given his or her initial permission to use vehicle).

Accordingly, we hold that consistent with the omnibus clause of West Virginia Code § 33–6–31(a), an insurer may properly deny liability coverage where the express terms of an automobile insurance policy provide that in order for liability coverage to exist, a driver, who is not otherwise insured under the policy, must have received the named insured's permission to use the automobile, and said driver lacked the express or implied permission of the named insured prior to using the vehicle.

It is undisputed by both parties in the present case that, under the terms of the Metropolitan policy, Orval Acord, Jr., was an insured since he was a resident relative. Thus, had Orval Acord, Jr., been driving at the time of the accident, he would have had liability coverage available to him for any bodily injuries or property damages for which he had responsibility. However, expressed just as clearly within the policy, is that any other person using the covered automobile must have obtained permission to do so from either named insured or the named insured's spouse, if a resident of the same household. Because the record so clearly demonstrates that the Appellant's son had not received the Appellant's or his spouse's express or implied permission to use

the vehicle, he simply could not have given permission to Mr. Allen to drive the car, sufficient to invoke the liability coverage of the policy. Further, there were absolutely no facts which would support that Mr. Allen had obtained any type of permission, either express or implied, from the named insured or his spouse. Consequently, it is evident that Mr. Allen was not an insured under the provisions of the Metropolitan policy.

■ An ancillary issue we address is whether Orval Acord, Jr., was a custodian of the vehicle at issue under the provisions of West Virginia Code § 33–6–31(a). The statute dictates that not only the owner of the automobile, but its custodian can provide the requisite permission to invoke coverage under the liability section of an automobile insurance policy. Specifically, West Virginia Code § 33–6–31(a) provides, in pertinent part, that "if coverage resulting from the use of a non-owned [12] automobile is conditioned upon the consent of the owner of such motor vehicle, *the word 'owner' shall be construed to include the custodian* of such non-owned motor vehicles." *Id.* (emphasis added). Accordingly, whether Orval Acord, Jr., was a "custodian" as contemplated by West Virginia Code § 33–6–31(a) is determinative of whether liability coverage exists under the statute.

Unfortunately, in interpreting the relevant statutory language, the Legislature has not given us any guidance as to the meaning of the word "custodian," insomuch as there is no legislative definition of that term in the statute. Nevertheless,

[t]his Court has recognized that generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for the general and proper use of such words. Further, the words are to be given their ordinary acceptance and significance and the meaning generally attributed to them.

*Amick v. C & T Dev. Co.,* 187 W.Va. 115, 118, 416 S.E.2d 73, 76 (1992) (citing *State v. Gen-*

---

**12.** While the Appellee argues that the Appellant owns the vehicle involved in the accident and, therefore, it was not a "non-owned" vehicle un-

der the statute, we need not resolve this issue on whether the vehicle was "non-owned." *See* W.Va.Code § 33–6–31(a).

*eral Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959)).

An examination of the United States District Court's decision in *Gordon v. Liberty Mutual Insurance Co.,* 675 F.Supp. 321 (E.D.Va.1987), is useful in our determination of the ordinary meaning of the term custodian. The *Gordon* court, interpreting the term "custodian" as it appears in Virginia's omnibus clause,[13] which is analogous to West Virginia's omnibus clause,[14] relied upon the following definition: " 'one that guards and protects or maintains: one entrusted officially with guarding and keeping. . . .' " 675 F.Supp. at 324 (quoting *Websters Third New International Dictionary* 559 (1981)). The district court ultimately held that "custodian" means "any person who is in possession of and intends to safeguard an automobile." [15] 675 F.Supp. at 325.

■ In using the *Webster* definition relied upon by the *Gordon* court, we find it necessary to focus further on the word "entrusted." The word "entrust" is defined as "to commit or surrender to another with a certain confidence regarding his care, use, or disposal of." *Websters Third New International Dictionary* 759 (Unabridged ed. 1966). The definition of "entrust" connotes that a person with possession and authority over an item relinquishes that possession and authority to another. Thus, utilizing the above-referenced definitions, we hold that in order to be a custodian as contemplated by West Virginia Code § 33–6–31(a), a person must

be entrusted, either expressly or impliedly, by the named insured or his spouse with the possession of the motor vehicle.[16]

Applying this interpretation to the present case, since Orval Acord, Jr., was neither a named insured or owner of the automobile at issue, in order for him to have been a custodian under the terms of the statute, the owner or named insured (Orval Acord, Sr., or his wife) would have had to entrust Orval Acord, Jr., either expressly or impliedly, with the possession of the automobile. This is evidenced not only from the ordinary meaning of the term "custodian," but from express statutory language that "consent, expressed or implied, of the named insured or his spouse" be given to any other person "responsible for the use of or using the motor vehicle." W.Va.Code § 33–6–31(a); *see Taylor,* 185 W.Va. at 607, 408 S.E.2d at 359, Syl.Pt. 4, in part. The record reveals that the Appellant failed to entrust his son with possession of the vehicle. The mere fact that Orval Acord, Jr., was an insured under the terms of the Metropolitan policy did not qualify him as a custodian under the statute.[17]

### III.

■ We next address whether uninsured motorist coverage is available to the Appellant under the Metropolitan policy. The Appellant maintains that if liability coverage is not available to him, then the uninsured motorist coverage must be applicable. Further, the Appellant contends that the policy provi-

---

**13.** The district court was interpreting Virginia Code § 38.2–2204 (1986), which provided that " 'any provision requiring permission or consent of the owner of such automobile . . . for the insurance to apply, shall be construed to include permission or consent of the custodian in the provision requiring permission or consent of the owner.' " *Gordon,* 675 F.Supp. at 323.

**14.** *See* W.Va.Code § 33–6–31(a).

**15.** The district court found that a lessee of an automobile qualified as a custodian under this definition. 675 F.Supp. at 325.

**16.** We decline to follow the *Gordon* court's definition of the term "custodian" insofar as it re-

quires the custodian to intend to safeguard the vehicle. *See* 675 F.Supp. at 325. We choose rather to focus on the intention of the person entrusting the vehicle to the custodian.

**17.** If the son not only was an insured, but also was operating the vehicle with either the express or implied consent of the named insured, then it is quite possible that he could have in turn given the requisite permission to another driver which would have brought the other driver within the realm of liability coverage. This scenario, however, is not before the Court and, therefore, we leave it unresolved at this time.

sions pertaining to uninsured motorist coverage are ambiguous, thereby mandating an interpretation of those provisions in the Appellant's favor. The Appellee, however, argues that uninsured motorist coverage is not available under the plain, unambiguous policy provisions.

We begin by examining the pertinent policy provisions. Section IV of the Metropolitan policy provides that the insurer "will pay **bodily injury damages,** caused by an accident arising out of the ownership, maintenance, or use of an **uninsured highway vehicle,** which **you** or a **relative** are legally entitled to collect from the owner or driver of the **uninsured highway vehicle.**" The terms of the policy also define an uninsured highway vehicle,[18] but expressly except from that definition "a **covered automobile**[19] or **highway vehicle** regularly furnished or available for the use of **you** or any **relative.**"

We have previously addressed similar policy provisions in *Alexander v. State Automobile Mutual Insurance Co.,* 187 W.Va. 72, 415 S.E.2d 618 (1992) and *Dairyland Insurance Co. v. East,* 188 W.Va. 581, 425 S.E.2d 257 (1992). In *Alexander,* we interpreted the following policy language which excluded a motor vehicle owned by the policyholder from the definition of an underinsured motor vehicle: "'neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle or equipment: (1) Owned by or furnished or available for the regular use of you or any 'family member.'" 187 W.Va. at 74, 415 S.E.2d at 620. We concluded that not only was the "owned by" exclusion valid and in accordance with West Virginia Code § 33–6–31, but also that it was plain and unambiguous. *Id.* at 79–80, 415 S.E.2d at 625–26.

Likewise, in *East,* the plaintiff was injured in a motor vehicle accident while riding as a passenger in a car which she owned. We found that by virtue of a named driver exclu-

sion, the insurance policy did not provide liability coverage for her injuries beyond the statutorily-mandated minimum coverage required by West Virginia Code § 17D–4–12(b)(2) (1991). 188 W.Va. at 583, 425 S.E.2d at 259, Syl.Pt. 2. As an alternative argument, the plaintiff in *East* asserted that if we upheld the validity of the named driver exclusion, the vehicle then became an uninsured motor vehicle for purposes of recovering damages under the uninsured motorist coverage section of the insurance policy. *Id.* at 587, 425 S.E.2d at 263. The relevant insurance policy language was: "'Excluded Uninsured/Underinsured Motor Vehicles [—] A *motor* vehicle owned by *you* or furnished for *your* regular use isn't an *uninsured* or *underinsured motor vehicle.*'" *Id.* We implicitly upheld the above-referenced exclusion, stating that "just because an [named driver] exclusion prevents an individual from recovering under the policy, the vehicle does not then become an uninsured motor vehicle." *Id.* (footnote omitted); *see Smith v. Valley Forge Ins. Co.* 591 So.2d 926, 927 (Fla.1992) (finding that provision of uninsured motor vehicle coverage in insurance policy excluding "any vehicle that is 'owned by or furnished or available for the regular use of you or any family member'" precluded uninsured motorist coverage where liability coverage was also precluded by valid exclusion).

■ Consequently, we find that uninsured motorist coverage was not available to the Appellant under the plain and unambiguous provisions of the Metropolitan policy. Moreover, as we previously stated in *East,* where liability coverage is properly denied under an insurance policy, the vehicle does not automatically become an uninsured motor vehicle for the purposes of obtaining uninsured motorist coverage under the terms of the insurance policy. *See* 188 W.Va. at 587, 425 S.E.2d at 263.

---

18. The Appellant relies upon the following policy definition of "uninsured highway vehicle" in support of his argument: "[a] motor vehicle to which no insurance policy or other financial security is applicable at the time of the accident[.]" The Appellant maintains that if there is

no liability coverage, and since the driver carried no insurance, then under the above-mentioned policy provision, the car becomes uninsured.

19. *See supra* note 9.

## IV.

 We readily dispense with the final issue of whether the estate of Orval Acord, Jr., and Mr. Allen should have been joined as indispensable parties. In *Nisbet v. Watson*, 162 W.Va. 522, 251 S.E.2d 774 (1979), we found that under West Virginia Code § 55–13–11, as amended,[20] all interested parties need not be brought into a declaratory judgment action. 162 W.Va. at 528–29, 251 S.E.2d at 779. In ascertaining whether a party should be joined as indispensable, we stated that "we subscribe to what we believe to be the more enlightened view which does not require that all persons who might have an interest in the subject matter be made parties, so long as the judgment entered would have no prejudicial effect upon the rights of such persons." *Id.* at 529, 251 S.E.2d at 779. In adopting this view, we found that it was sufficient that all interested parties in the case had been notified of the pending action, thereby providing them an opportunity to participate in the action if they so desired. *Id.*

In the present case, the Appellee sought a determination of its contractual obligation with the named insured, the only party with whom it had any contractual relationship. The Appellee stated it its brief that it made diligent efforts to provide notice of the declaratory action to Mr. Allen by sending to him, via certified mail to his last known address, a copy of the complaint for declaratory judgment. This notice, however, was returned as undeliverable by the post office. Additionally, the named insured, Orval Acord, Sr., is also the administrator of his son's estate. Consequently, Orval Acord, Jr.'s, estate necessarily had notice of the declaratory judgment proceedings, and had Orval Acord, Sr., wished to assert claims on behalf of his son's estate, he could have sought leave to intervene, pursuant to Rule 24 of the West Virginia Rules of Civil Procedure. Thus, the trial court committed no error with regards to this issue.

Based on the foregoing, the decision of the Circuit Court of Raleigh County is hereby affirmed.

Affirmed.

MILLER, J., sitting by temporary assignment.

ALBRIGHT, did not participate.

---

20. West Virginia Code § 55–13–11, as amended, provided, in relevant part that " '[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding.' " *Nisbet*, 162 W.Va. at 528, 251 S.E.2d at 779.