582 S.E.2d 819

**Sheila CANTRELL, Plaintiff Below, Appellant**

v.

**Joseph CANTRELL, State Farm Mutual Automobile Insurance Company, and Jack D. Brewster, Defendants Below, Appellees.**

No. 30850.

Supreme Court of Appeals of West Virginia.

Submitted March 26, 2003.

Decided April 21, 2003.

Dissenting Opinion of Chief Justice Starcher July 11, 2003.

Marvin W. Masters, April D. Ferrebee, David L. Stuart, Masters & Taylor, L.C., Charleston, for Sheila Cantrell.

Charles S. Piccirillo, Kelly R. Charnock, Shaffer & Shaffer, PLLC, Madison, for State Farm and Jack D. Brewster.

**PER CURIAM:**

The appellant, Sheila Cantrell, appeals the December 31, 2001 order of the Circuit Court of Mingo County which granted summary judgment to the appellees, State Farm Mutual Automobile Insurance Company and agent Jack D. Brewster (State Farm). The appellant avers that summary judgment was granted in error because underinsured motorist benefits should be available to her

under her husband's policy of insurance in addition to the bodily injury liability limits which she received. We find no error.

## I.

### FACTS

The facts are not in dispute. On February 28, 2000, the appellant was a passenger in a 1983 Chevrolet truck which was owned by her husband, appellee Joseph Cantrell. While driving on Route 52 near Taylorville in Mingo County, West Virginia, Mr. Cantrell lost control of the vehicle, ran off the roadway, and struck a tree. The appellant was injured. The Cantrell vehicle was insured by State Farm with per person bodily injury liability limits of $100,000 and underinsured motorist coverage (UIM) with per person bodily injury limits of $100,000.

Shortly after the accident but before she retained legal counsel, State Farm offered the appellant the bodily injury liability limit of $100,000 to settle her claim. State Farm subsequently received a letter from the appellant's attorney demanding payment of the liability limits and reserving the right to contest UIM coverage in a declaratory judgment action. State Farm agreed to the liability settlement but maintained that the Cantrell vehicle did not meet the definition of an underinsured motor vehicle so as to afford UIM coverage to the appellant. On July 5, 2000, State Farm issued a check in the amount of $100,000 for the per person bodily injury liability limit. In exchange, the appellant executed a full and final release of her husband, Joseph Cantrell. She then filed a complaint in circuit court seeking, *inter alia*, UIM benefits.

State Farm removed the action to federal court on the basis of diversity of citizenship and fraudulent joinder of claim representative Jack Brewster. The appellant filed a motion to remand. An order was entered on July 19, 2001, remanding the case back to the Circuit Court of Mingo County. State Farm filed a motion for summary judgment asserting that UIM coverage was not available to the appellant under the Cantrell policy because the vehicle in which the appellant was riding did not qualify as an underinsured motor vehicle under the insurance policy. On December 31, 2001, the circuit court entered an order which granted summary judgment to State Farm and dismissed the appellant's complaint. It is from this order that the appellant appeals.

## II.

### STANDARD OF REVIEW

The circuit court found, as a matter of law, that State Farm and its agent, Jack Brewster, were entitled to summary judgment. It is well-settled that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover,

"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syllabus Point 2, *id.*

## III.

### DISCUSSION

In her petition for appeal filed in this Court, the appellant claimed that the circuit court erred in two respects. First, she argued that the circuit court granted summary judgment to State Farm prior to the completion of discovery. Second, she argued that summary judgment was granted without a proper legal analysis of her husband's insurance policy under the principles set forth by this Court in the case of *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000). After we handed down our subsequent opinion in the case of *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002), the appellant abandoned her *Broadnax* argument. Instead, she argues in her brief submitted on appeal that the clear language of W.Va.Code § 33–6–31

(1998) requires underinsurance coverage to apply to a spouse of an underinsured driver.

The appellant maintains that the circuit court erred by holding that she cannot stack UIM coverage onto the liability insurance which she already collected under the Cantrell insurance policy. She reasons that W.Va.Code § 33–6–31(b) [1] does not permit exceptions or exclusions to the definition of "underinsured motor vehicle;" therefore, State Farm's definition of "underinsured motor vehicle" violates public policy in that it is more restrictive than the statute. As a result, the appellant concludes that the statutory provision is void. The appellee argues that the policy language is valid, enforceable, and does not violate public policy.

The appellant's reasoning overlooks the fact that this Court has on prior occasions approved language similar to that contained in Mr. Cantrell's policy. In fact, during oral argument, counsel for the appellant admitted as much and asked us to revisit two opinions previously published by this Court that deal with this issue. Counsel contends that our holdings in *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989), and *Thomas v. Nationwide Mut. Ins. Co.,* 188 W.Va. 640, 425 S.E.2d 595 (1992), cannot be reconciled with W.Va.Code § 33–6–31(b); consequently, the exclusion cannot apply to the appellant. We disagree.

■ There is no doubt that " '[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.' Syl. pt. 3, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989)." Syllabus Point 1, *Thomas v. Nationwide Mut. Ins. Co.,* 188 W.Va. 640, 425 S.E.2d 595 (1992). The UIM clause in the Cantrell policy of insurance specifically states:

> We will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle.* The *bodily injury* or *property damage* must be

caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle.*

\* \* \*

> An *underinsured motor vehicle* does not include a land motor vehicle:
>
> 1. insured under the liability coverage of this policy;
>
> 2. furnished for the regular use of *you, your spouse* or any *relative*[.]

This clause is commonly referred to as the "family use exclusion."

W.Va.Code § 33–6–31 (1998), states in pertinent part:

> (b) "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.
>
> (c) As used in this section, the term "bodily injury" shall include death resulting therefrom and the term "named insured" shall mean the person named as such in the declarations of the policy or contract and shall also include such person's spouse if a resident of the same household and the term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above[.]

This precise statute was applied to a "family use exclusion" included in an insurance policy purchased by the plaintiff's husband in

---

**1.** The pertinent sections of W.Va.Code § 33–6–31 are quoted later in this opinion.

the case of *Thomas v. Nationwide Mut. Ins. Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992). The facts of *Thomas* are similar to the facts in the case now before us. In *Thomas*, Deborah Thomas was riding with her husband when he went off the road and struck a utility pole at a high rate of speed. Ms. Thomas sustained multiple fractures to her hips and legs which resulted in permanent impairment. The Thomases owned two vehicles which were insured under a single insurance policy. The vehicles carried liability and UIM limits of $100,000/$300,000 each. The insurance company paid the full $100,000 liability coverage but denied UIM coverage. Ms. Thomas filed a declaratory judgment action in circuit court to determine the rights and obligations of the parties. The circuit court certified questions to this Court.

■ The primary question addressed by the *Thomas* Court reads as follows:

> 3. Whether in the instant case the following definitional exclusion (known as the Family Use Exclusion) is a valid exclusion in light of the current law and public policy of the State of West Virginia?
>
> '2. We will not consider as an underinsured motor vehicle: (e) any vehicle owned by or furnished for the regular use of you or a relative.'

*Id.*, 188 W.Va. at 642, 425 S.E.2d at 597. After discussing applicable case law, this Court reasoned that:

> Because recovery by a plaintiff of underinsured motorist benefits is dependent on the existence of two policies, the tortfeasor's and the plaintiff insured's, when a tortfeasor is underinsured, the plaintiff insured normally recovers third-party liability benefits from the tortfeasor's insurance coverage and supplements this recovery, if necessary, with underinsured motorist benefits through his or her own insurance. A family use exclusion, which excludes from the definition of "underinsured motor vehicle" any vehicle owned by or furnished for the regular use of the insured or a relative, or in like terms, has the purpose of preventing underinsured coverage from being converted into additional liability coverage, because when the exclusion is applied, it is the liability coverage that has

been paid for by the insured, and not underinsured coverage. Therefore, such an exclusion would not violate the public policy of full compensation of an insured.

*Id.*, 188 W.Va. at 645, 425 S.E.2d at 600. The holding expressed in Syllabus Point 2 of *Thomas* is dispositive of the issue presently before us:

> When an insurer issues an automobile insurance policy which provides both liability and underinsured motorists coverage, but which policy contains what is commonly referred to as a "family use exclusion" for the underinsured motorist coverage, and when, in a single car accident, the passenger/wife receives payments under the liability coverage for the negligence of the driver/husband, such exclusion is valid and not against the public policy of this state. That exclusion, which excludes from the definition of "underinsured motor vehicle" any automobile owned by or furnished for the regular use of the insured or a relative, has the purpose of preventing underinsured coverage from being converted into additional liability coverage.

■ We reiterate that the purpose of optional UIM coverage "is to enable the insured to protect himself [or herself], if he [or she] chooses to do so, against losses occasioned by the negligence of *other drivers* who are underinsured." *Deel*, 181 W.Va. at 463, 383 S.E.2d at 95. (Emphasis added). "Other drivers" necessarily infers the drivers of vehicles other than the vehicle owned and operated by the insured.

Mr. Cantrell's insurer promptly paid the appellant the liability limits available under the insurance policy. We reject the appellant's public policy argument that underinsurance benefits should be stacked on liability coverage.

For the foregoing reasons, the judgment of the Circuit Court of Mingo County is affirmed.

Affirmed.

CHIEF JUSTICE STARCHER, dissents and files a dissenting opinion.

JUSTICE McGRAW dissents.

(Filed July 11, 2003)

STARCHER, C.J., dissenting:

I dissent, because I agree with the appellant's argument: the policy language at issue in this case (and in many of the precedents relied upon by the majority) is contrary to our automobile insurance statutes and therefore unenforceable.

Insurance cases should begin with a word-by-word comparison of the language in the insurance policy with the language of our automobile insurance statutes. As we held in *Adkins v. Meador*, 201 W.Va. 148, 153, 494 S.E.2d 915, 920 (1997), "In construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with West Virginia law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute." Provisions in an insurance policy that are more restrictive than statutory requirements are void and ineffective as against public policy. *See* Syllabus Point 2, *Universal Underwriters Ins. Co. v. Taylor*, 185 W.Va. 606, 408 S.E.2d 358 (1991); Syllabus Point 1, *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974); Syllabus Point 2, *Johnson v. Continental Casualty Co.*, 157 W.Va. 572, 201 S.E.2d 292 (1973).

When the language of an insurance policy is contrary to statute and therefore void, the policy should be construed to contain the coverage required by West Virginia law. *W.Va.Code*, 33–6–17 [1957] mandates that:

> Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this chapter, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this chapter.

To understand why the State Farm policy in this case is contrary to our insurance statutes, and therefore void, requires an understanding of the facts. The facts are very simple: State Farm issued an insurance policy on a car that contained two kinds of coverage: liability insurance, and insurance against underinsured motorists. *The owners of the car paid separate premiums for both kinds of insurance.*

The plaintiff was a passenger in the car. The defendant driver of the car was negligent and drove the car off the road. Put another way, the driver of the car is a tortfeasor who breached his duty of care to his passenger, thereby causing her bodily injury.

Through the operation of our common law of torts, we can say that *liability* has been imposed upon the driver for his passenger's bodily injuries. West Virginia law requires that every car carry *liability* insurance that insures "the person named therein and any other person ... using such vehicle ... against loss from the *liability imposed by law for damages* arising out of the ownership, operation, maintenance or use of such vehicle[.]" *W.Va.Code*, 17D–4–12 [1991] (emphasis added). This requirement is mirrored in another statute, which states that "[n]o policy or contract of bodily injury liability insurance ... covering *liability* arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered ... unless it shall contain a provision insuring the named insured and any other person ... against liability for death or bodily injury sustained ... as a result of negligence in the operation or use of such vehicle." *W.Va. Code*, 33–6–31(a) [1998] (emphasis added).

In this case, there was in effect a State Farm liability insurance policy that insured the driver, or any other person using the vehicle, "against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle[.]" Under this liability portion of the State Farm policy, State Farm paid the passenger of the car the full limits of the liability policy.

The passenger of the car did not, however, receive her full damages, because the driver of the car was "underinsured." To protect the citizens of West Virginia from drivers who buy insufficient amounts of liability insurance, the Legislature decreed that in every motor vehicle policy that is sold in West Virginia, the insurance company must "pro-

vide an option" for the "insured" to buy coverage that will "pay the insured all sums [up to the limits of underinsured motorist coverage purchased] which he shall legally be entitled to recover as damages from the owner or operator of an ... underinsured motor vehicle ... without setoff against the insured's policy *or any other policy*." *W.Va. Code,* 33–6–31(b) (emphasis added). In sum, to recover benefits under this type of insurance coverage, the "insured" must prove that he or she is legally entitled to recover damages from a tortfeasor who doesn't have enough coverage to fully indemnify the insured's losses.

The statute defines an "insured" to mean the person named on the declarations page of the policy; if living in the same household, the spouse and relatives of the person named on the declarations page; and any other person who "uses" the vehicle. *W.Va.Code,* 33–6–31(c).

The statute plainly mandates that coverage against a driver or operator of an underinsured motor vehicle protects the person named on the declarations page of the policy and their spouse and their relatives, against bodily injuries caused by the underinsured driver, regardless of where they are when the injury occurs. There is no spatial or temporal requirement that the insured be riding in the insured car for coverage to apply. As one court stated, underinsured motorist coverage

> ... is portable: The insured and family members are covered not only when occupying the covered vehicle, but also when in another automobile, and when on foot, on a bicycle or even sitting on a porch....

> The status of the named insured and his relatives as persons insured against negligent uninsured motorists is not altered by there being other family vehicles having no uninsured motorist coverage. They acquire their insured status when coverage is purchased for any household vehicle. Thereafter, they are insured no matter where they are injured. They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a

motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick. *Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 24–38, 294 N.W.2d 141, 145–152 (1980). *See also,* 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 4.2, at 60–61 (2d ed. 1992) ("Persons who are either named insureds or family members residing with a named insured ... are afforded relatively comprehensive protection by the provisions used in most uninsured motorist insurance coverages." As insureds they "are protected when they are operating or are passengers in a *motor* vehicle, as well as when they are engaged in any other activity such as walking, riding a bicycle, driving a hay wagon, or even sitting on a front porch.")

In this case, State Farm admits that it sold underinsured motorist coverage to the plaintiff-passenger. West Virginia law mandates that the coverage is supposed to follow her wherever she might be, whether walking down the road, riding a bicycle, driving a hay wagon, riding on horseback, bouncing on a pogo stick, or sitting on a front porch. *W.Va.Code,* 33–6–31(b) and (c) make no exceptions.

State Farm, however, ignored the statute and went ahead and made an exception to the requirements of *W.Va.Code,* 33–6–31(b) and (c), and squeezed an exclusion in its policy that denied the plaintiff-passenger any protection *if* the underinsured motorist happened to be her "spouse or any relative" or the vehicle that was being driven was "insured under the liability coverage of this policy."

Furthermore, *W.Va.Code,* 33–6–31(b) defines an "underinsured motor vehicle" as "a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage." Remarkably, the Legislature repeats the statement that "[n]o sums payable as a result of underinsured motorists' coverage shall be reduced by pay-

ments made under the insured's policy or any other policy."

The State Farm policy limits this definition of underinsured motor vehicle to exclude such vehicles as those insured by the liability portion of the same policy, or vehicles routinely used by the family. Again, State Farm ignored the statute, and gives less coverage than what the Legislature mandated when it passed the statute. And again, it ignored the mandate that is found *twice* in *W.Va.Code*, 33–6–31(b) that underinsured motorist coverage cannot "be reduced by payments made under the insured's policy or any other policy."

To summarize, first, the exceptions contained in the State Farm policy are found nowhere in the *West Virginia Code*. If the Legislature wanted insurance consumers to be able to buy protection against underinsured motorists that had more holes than Swiss cheese, it would have said so. It didn't, and the law mandates comprehensive coverage.

Second, the Legislature mandates that underinsured motorist coverage pay the "insured" his or her damages "without setoff against the insured's policy or any other policy." State Farm's policy language violates this statutory provision, because it essentially offsets the insured's underinsured motorist coverage by any amounts recovered under another policy.

Third, State Farm argued—and the majority opinion appears to have bought it—that the plaintiff-passenger was trying to convert "relatively inexpensive underinsured coverage to liability coverage." In other words, the plaintiff-passenger was trying to get a "double recovery" under the policy. This is just wrong. Two separate premiums were paid for these two coverages, and the coverages protect two different people, regardless of the amount the insurance company charged for a premium. The plaintiff-passenger bought underinsured motorist coverage to protect *herself* against the liability of a motorist with too little insurance. The tortfeasor bought liability insurance coverage to protect *himself* should he ever become liable for bodily injury damages to someone else.

Both parties should be allowed to get that for which they paid.

The plaintiff-passenger in this case paid for protection against bodily injuries that might be caused by an underinsured driver. As fate would have it, that underinsured driver was her husband. Our automobile insurance laws mandate that underinsured motorist protection follow the plaintiff-passenger wherever she goes, but State Farm's exclusion is blatantly contrary to that statutory mandate.

State Farm's policy language is contrary to the statute, and denies the plaintiff that for which she bargained and paid. I therefore respectfully dissent.