415 S.E.2d 618

Lena ALEXANDER, Plaintiff Below,

v.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, an Ohio Corporation and State Farm Mutual Automobile Insurance Company, an Illinois Corporation, Defendant Below.

No. 20630.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided March 20, 1992.

James C. West, Jr., Kathryn K. Allen, West & Jones, Clarksburg, for plaintiff.

Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for defendant, State Auto. Mut. Ins. Co.

**BROTHERTON, Justice:**

This case involves certified questions from the United States District Court for the Northern District of West Virginia. The questions certified read as follows:

1. Whether the owned-underinsured motor vehicle exclusion of the insurance policy issued to the automobile owner, Louise Lowther, excludes underinsured motorist coverage of the guest passenger, Lena Alexander, where the owner's liability limits have been paid to the guest passenger under the policy?

2. Whether the insurance policy requirements that the tortfeasor's liability for damages arise from the ownership, maintenance, or use of an underinsured vehicle precludes underinsured motorist coverage for a guest passenger injured in an automobile owned by the insured?

3. Whether a guest passenger is entitled to maintain a direct action for damages against an insurance carrier under the underinsured motorist provision of an insurance policy where the guest passenger has settled with the tortfeasor's insurance carrier expressly reserving the right to pursue a claim for applicable underinsured motorist coverage, if any?

4. Whether an underinsured motorist insurance carrier is liable to a guest passenger for prejudgment interest, attorneys' fees, and for additional damages in addition to the carrier's stated underinsured motorist policy limits?

On October 6, 1989, Lena Alexander was injured in an automobile accident in Harrison County, West Virginia. The vehicle in which Mrs. Alexander was riding was owned by her sister, Louise Lowther and was being driven by another sister, Verna Elbon. The accident occurred when Mrs. Elbon turned left across an oncoming lane of traffic and was struck by another vehicle. The driver of the vehicle which struck the car in which Mrs. Alexander was riding was not sued and is not party to this suit. Mrs. Alexander was not a member of the Lowther household nor was the vehicle in which she was riding furnished or available for her regular use. The vehicle was insured at the time of the accident by State Automobile Mutual Insurance Company (State Auto). Mrs. Elbon, the driver of the car, was covered by an insurance policy issued by State Farm Mutual Automobile Insurance Company (State Farm). Mrs. Alexander did not have underinsured motorist coverage.

Both State Farm and State Auto paid the maximum limits of their medical liability

coverage and their bodily injury liability coverage to Mrs. Alexander. Thus, State Auto paid $1,000 in medical expenses and $50,000 in bodily injury coverage, while State Farm paid $25,000 in medical expenses and $100,000 in bodily injury coverage.

Both the State Farm and State Auto policies had provisions for underinsured motorist coverage in the amount of $20,000 per person. Releases executed by Mrs. Alexander to State Farm and State Auto both claimed to preserve her right to pursue future claims for underinsured motorist coverage under both policies.

Thereafter, Mrs. Alexander made a demand for underinsured motorist coverage upon both insurance companies. Initially, both insurance companies refused to pay the claims. The plaintiff then filed an action against State Farm and State Auto for breach of contract for refusing to make payment under the underinsured motorist provisions. Shortly thereafter, Mrs. Alexander accepted $20,000 from State Farm as payment of the underinsured motorist claim for the coverage provided to Verna Elbon, along with a sum of $8,000 for fees and consequential damages.

However, State Auto moved to dismiss Mrs. Alexander's claim on the ground that the underinsured motorist coverage was not available because the Lowther vehicle was not an underinsured vehicle within the policy language. State Auto also contended that this action was not maintainable because judgment against the tortfeasor had not been obtained. Last, State Auto argued that the plaintiff may not recover prejudgment interest in excess of the available policy limits. On July 25, 1991, the United States District Court for the Northern District of West Virginia certified the four questions listed above to this Court. We agreed to hear these questions on November 5, 1991.

The State Auto underinsured motorist coverage policy provides, in part, as follows:

We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" . . .

1. "Bodily injury" sustained by an "insured" and caused by the accident; . . .

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the . . . "underinsured motor vehicle." We will pay damages under this coverage caused by an accident with an "underinsured motor vehicle" only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

\* \* \* \* \* \*

"Insured" as used in this endorsement means:

\* \* \* \* \* \*

2. Any person "occupying" "your covered auto."

\* \* \* \* \* \*

However, neither "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

■ Consequently, the issue before this Court is whether under this policy language, a guest passenger can obtain underinsured motorist coverage from the policy covering the car in which she was riding at the time of the injury, a policy separate and apart from her own insurance policy. It is uncontested that Mrs. Alexander sustained bodily injury while occupying Mrs. Lowther's insured automobile and while Mrs. Elbon was driving. However, Mrs. Alexander's status as an insured under the underinsured motorist vehicle policy is contingent on whether the vehicle in which she was riding at the time of the injury constitutes an underinsured motor vehicle under the policy language.

The public policy surrounding underinsured motorist coverage has been fully defined by this Court: "in uninsured or underinsured motorist cases . . . the uninsured person [should] be *fully compensat-*

ed for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *State Automobile Mutual Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737, 745 (1990); *see also* syl. pt. 1, *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990). However, the party's status as an insured under the policy must first be established before it can be determined that the underinsured coverage is available.

West Virginia Code § 33–6–31(b) (1992) defines an "underinsured motor vehicle":

"Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) *less than* limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits *less than* limits the insured carried for underinsured motorists' coverage.

Underinsured motorist coverage has been interpreted by this Court in recent years in two major cases. The first, *State Automobile Mutual Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), involved a plaintiff who was struck and injured by a car driven by Clifford Moore. The plaintiff sued Moore and sought $500,000 in compensatory damages, $5,000 in property damages, and $10,000 in consequential damages for loss of business property (for property damaged in the accident). Moore's automobile liability insurance carrier, Nationwide Mutual, offered Youler $50,000, which was the policy bodily injury limits for one person. Youler refused to accept the offered $50,000 as full satisfaction.

 The Youlers were covered by an underinsured motorist provision from two insurance policies issued by State Automobile Mutual Insurance Company. Each of these two underinsured motorist policy endorsements contained limits of $100,000 for bodily injury of one person in an automobile accident. State Auto later brought a

declaratory judgment action to determine their rights and liabilities under the policy with respect to the insured's claim for underinsured motorist benefits. In *Youler*, the Court discussed the liability limits which constitute underinsured motorist coverage. *Id.* 183 W.Va. at 568, 396 S.E.2d at 749. The Court then concluded that:

*W.Va. Code*, 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, *from one's own insurer,* of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

*Id.* at syl. pt. 4 (emphasis added).

Thus, while our opinion in *Youler* was pertinent to the issue of stacking multiple coverages, there was no question that the Youlers were entitled to the available underinsured motorist coverage. The only question in *Youler* was just how much coverage was available and what setoff was allowed. *Youler's* relevance to our opinion today is found in the principle that underinsured motorist coverage contemplates recovery "from one's *own* insurer . . . ," not from a third party. *Id.* (emphasis added).

In *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990), this Court again discussed a situation involving a plaintiff injured by an automobile other than her own. On March 2, 1987, the plaintiff's car collided with an automobile owned by Leonard Williams. The plaintiff alleged that Williams' negligence caused her damages in excess of $200,000. Williams had an automobile liability insurance policy with limits of $100,000 per person, and that policy limit was paid to the plaintiff. The

plaintiff was insured by the defendant, Westfield Insurance Company, which provided underinsured motorist coverage to the plaintiff with limits of $100,000 per person. The plaintiff brought an action which was removed to the United States District Court for the Northern District of West Virginia. That court certified a question to this Court, specifically asking whether the plaintiff was "entitled to recover from the defendants ... her legal damages, up to policy limits of her underinsured motorist's insurance, without setoff against proceeds received by the plaintiff from her own or any other policy...." *Id.* 184 W.Va. at 333, 400 S.E.2d at 577.

The Court in *Pristavec* answered the certified question in the affirmative. Like the situation in *Youler*, there was no question that the plaintiff, Pristavec, was entitled to underinsured motorist coverage. However, unlike the case at hand, the underinsured motorist coverage issued from her own policy rather than that of a separate party. Thus, *Alexander* presents an entirely new question on the issue of the availability of underinsured motorist coverage.

More relevant to the issue before us today is this Court's opinion in *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989). In *Deel*, the plaintiff was driving his personally owned vehicle when he was struck by the defendant, who was uninsured and driving an automobile owned by a third party. The third party had a policy with Dairyland Insurance Company with a $20,000 bodily injury limit. Dairyland attempted to settle with the plaintiff, but the plaintiff claimed injuries greater than the $20,000 bodily injury limit. The plaintiff's car was insured, but his policy did not include underinsured motorist coverage. However, the plaintiff's father, Junior Deel, had a valid policy of insurance which included $100,000 worth of underinsured motorist coverage per person and $300,000 per occurrence. Because the plaintiff lived in his father's household at the time of the accident, he sought to recover under his father's underinsured motorist policy with Aetna. Junior Deel's Aetna policy provided that:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by a covered person and property damage caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

\* \* \* \* \* \*

EXCLUSIONS

(a) We do not provide Underinsured Motorist Coverage for bodily injury and property damage sustained by any person:

(1) While occupying, or when struck by, any motor vehicle or trailer of any type owned by you or any family member which is not insured for this coverage under this policy.

*Id.* 181 W.Va. at 461–462, 383 S.E.2d at 93.

■ After analyzing the Aetna policy, the Court in *Deel* found that the automobile owned by the plaintiff was not an insured vehicle under the policy language. Thus, the question before the Court was whether the underinsured motorist coverage purchased by Junior Deel, the plaintiff's father, provided coverage to the plaintiff while he was driving his personally owned vehicle insured by another company. The lower court found that the underinsured motorist provisions of the father's Aetna policy did not cover the plaintiff, and we agreed:

Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.

*Id.* at syl. pt. 3.

In reaching this conclusion, the Court in *Deel* stated that if the insurance policy's exclusionary clause was more restrictive than the statute, it would be considered void. Thus, we examined W.Va.Code §§ 33–6–31(b) & (k), which discuss exclu-

sions to policies and the option for an insured to increase his uninsured motorist coverage to "all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle...." *Id.* 181 W.Va. at 463, 383 S.E.2d at 95. The Court also noted that in 1982, W.Va.Code § 33–6–31(b) was further amended to require an insurer to provide optional underinsured motorist coverage for "appropriately adjusted premiums." *Id.* Because of the 1982 amendment, the Court concluded that the legislature did not view:

> uninsured and underinsured coverage in the same light. Uninsured motorist coverage is required, while underinsured motorist coverage is optional. There are significant policy reasons for mandatory requirement of uninsured coverage.... The purpose of optional underinsured motorist coverage is to enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured. A contract for greater benefits generally justifies a greater premium.... The insurer must offer underinsured motorist coverage; the insured has the option of taking it; and terms, conditions, and exclusions can be included in the policy as may be consistent with the premiums charged. Clearly, *an insurer can limit its liability so long as such limitations are not in conflict with the spirit and intent of the statute and the premium charged is consistent therewith.*

*Id.* (emphasis added). Both the reasoning and the conclusion reached in *Deel* are applicable to the case at hand.

In this case, the exclusionary language found in the State Auto policy is not more restrictive than, and thus is not contrary to, the statute. West Virginia Code §§ 33–6–31(b) and (k) state:

> (b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than

the requirements of section two, article four, chapter seventeen-d of the code of West Virginia, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident: ... Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

> \* \* \* \* \* \*

> (k) Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those pre-

scribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.

As was the situation in *Deel*, underinsured motorist coverage remains an optional coverage available at a minimal cost to the insured. An insured has the choice whether to choose the extra coverage, as we noted in *Deel*, "to enable the insured *to protect himself*, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured." *Deel*, 181 W.Va. at 463, 383 S.E.2d at 95 (emphasis added).

The United States District Court for the Southern District of West Virginia reached a similar conclusion in *Thompson v. Nationwide Mutual Ins. Co.*, Civil Action No. 2:89–0139 (1991). In *Thompson*, the plaintiff sued on behalf of the estate of his wife, who was a passenger in an automobile driven by her husband, the plaintiff. The plaintiff attempted to collect underinsured motorist coverage from their family underinsured motorist policy, and the insurance company refused to pay. The plaintiff filed suit. In his opinion, Judge Copenhaver discussed the validity of family vehicle exclusion under West Virginia law. After reviewing the exception's constitutionality, the court determined that the family vehicle exclusion was valid, not contrary to West Virginia's public policy, and that the phrase in the exclusion, "a relative living in your household," was unambiguous, express, and enforceable.[1] *Id.* at 26–27.

Mrs. Alexander argues that *Thompson* has no applicability to the case at hand because the exclusion in *Thompson*, unlike this case, excluded "any vehicle owned by or furnished for the regular use of you or a relative living in your household." Further, Mrs. Alexander points out that since the injured party in *Thompson* was also the insured's wife, then the vehicle was properly furnished for Mrs. Thompson's use. Here, Mrs. Alexander contends that since she was not a member of the insured's household and not a regular user of the vehicle, *Thompson* could not be relevant to her case.

While Mrs. Alexander's point is well taken, she ignores the difference in the language between the State Auto policy in this case and the policy in *Thompson*, and the fact that Judge Copenhaver did not have to analyze the policy exclusion any further than the "relative living in your household" exception because Mrs. Thompson, as the insured's wife, was so clearly a member of the insured's family. In this case, the "any family member" exclusion on which the plaintiff focuses is just one part of several exclusions within one sentence. The policy language is disjunctive—the phrases are connected by the term "or," not "and."

> However, neither "uninsured motor vehicle" or "underinsured motor vehicle" includes any vehicle or equipment
>
> (1) *owned by* or furnished or available for the regular use of *you* or any "family member."

(Emphasis added). This subtle difference is extremely important to our analysis.

By reading the exclusion with the term "or" in place, it is both plain and unambiguous to this Court that the policy language is sufficient to exclude from underinsured motor vehicle coverage accidents which involve a vehicle "owned by ... you," the insured. This Court has held on numerous occasions that " '[w]here provisions of an

---

**1.** A Pennsylvania court reached a similar conclusion to Judge Copenhaver's decision in *Thompson* in a case involving the spouse of the insured driver where the insured's car was involved in a single car accident. In *Newkirk v. United Services Automobile Ass'n*, 388 Pa.Super. 54, 564 A.2d 1263 (1989), *appeal denied*, 597 A.2d 1153 (Pa.1990), the plaintiffs filed suit after the insurance company refused to pay out underinsured motorist coverage based upon the family vehicle exclusion found in the insured's policy. As in the case now before us, the policy excluded from the definition of an "underinsured motor vehicle" any automobile "owned by or furnished or available for the regular use of you or any family member." *Id.* 388 Pa.Super. at 56, 564 A.2d at 1264. The court found the exclusion of any family vehicle to be clear and unambiguous, and noted that "[a]ny expectation, therefore, which the Newkirks had that they were paying for underinsured motorist coverage under the circumstances present in this case was unreasonable." *Id.* at 60–61, 564 A.2d at 1266.

insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation or a public policy, the provisions will be applied and not construed.'" Syl. pt. 2, *Shamblin v. Nationwide Mutual Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639, 640 (1985); *Prete v. Merchants Property Ins. Co. of Indiana*, 159 W.Va. 508, 223 S.E.2d 441, 443 (1976); *Atkins v. Stonewall Cas. Co.*, 155 W.Va. 81, 181 S.E.2d 269, 272 (1971).

 In short, underinsured motorist coverage is intended to compensate parties for injuries caused by other motorists who are underinsured. As long as the insured owns both the underinsured motorist policy in question and the vehicle, then the insured's vehicle will not be considered an underinsured motor vehicle for purposes of the insured's own underinsured motorist coverage.[2] Because an underinsured motorist policy is intended to benefit the person who bought the policy, we conclude that underinsured motorist coverage is not available to a guest passenger unless the statute or policy language specifically provides for such coverage. *See Youler*, 183 W.Va. at 561, 396 S.E.2d 742 at syl. pt. 4; *Deel*, 181 W.Va. at 463, 383 S.E.2d at 95.

We cannot help but conclude that the plaintiff's attempts to obtain underinsured motorist coverage from Mrs. Lowther's policy are far afield from what the Legislature intended in codifying the underinsured motorist coverage in Chapter 33 of the West Virginia Code.[3] During oral argument, counsel admitted that Mrs. Alexander, like Johnny Deel, had not chosen to purchase underinsured motorist coverage for herself. It seems patently unfair that a person, who by her own free will, chooses not to buy optional underinsured motorist coverage, should still seek to benefit from someone else's choice to protect themselves, at a cost, from the potential negligence of other motorists who are underinsured. No allegations were raised that the insurance company failed to advise the plaintiff of her option to buy underinsured motorist coverage. It is unfortunate perhaps, but common sense tells us that a party cannot get something for nothing. In this case, Mrs. Alexander purposely chose not to purchase underinsured motorist coverage, and thus, she cannot benefit from another's prudence.

We conclude that first, the "owned by" exclusion found in the State Auto insurance policy is not more restrictive than the statutory provisions on underinsured mo-

---

**2.** Numerous other courts have reached nearly identical conclusions with respect to the interpretation of statutory and policy language similar to that before us today. In *Preferred Risk Mutual Ins. Co. v. Tank*, 146 Ariz. 33, 703 P.2d 580 (App.1985), the Arizona Court of Appeals ruled that since underinsured coverage was optional:

> [t]he statute relating to underinsured motorist coverage was clearly designed to permit the prudent insured to protect himself and his family and passengers against the possibility of injury caused by another motorist with insufficient insurance. This is a completely different type of insurance from liability insurance, which protects those who are injured against the negligence of the insured,.... When operation of the insured vehicle causes an injury, liability coverage is available to the injured party. By refusing to pay underinsured motorist benefits in addition, that type of coverage is limited to the situations for which it was created—compensation for injuries caused by other motorists who are underinsured.

*Id.* 146 Ariz. at 36, 703 P.2d at 583. *See also Millers Casualty Ins. Co. of Texas v. Briggs*, 100 Wash.2d 1, 665 P.2d 891 (1983); *Myers v. State*

*Farm Mutual Auto. Ins. Co.*, 336 N.W.2d 288 (Minn.1983).

**3.** The plaintiffs have proffered several cases which they claim support their position. In both jurisdictions, however, either the statute or policy language was different from the West Virginia statute, and was sufficient to alter the outcome of the lawsuits. In *McDonald v. State Farm Mutual Auto. Ins. Co.*, 287 S.C. 40, 336 S.E.2d 492 (App.1985), the South Carolina court found the policy exclusion provision to be invalid because South Carolina requires insurance policies "of the kind involved here to provide certain minimum benefits...." *Id.* 336 S.E.2d at 493. The West Virginia Legislature has, of course, made the purchase of underinsured motorist coverage to be optional, unlike uninsured motorist coverage.

The plaintiff also relies on Oklahoma case law which invalidated the family vehicle exclusion based upon the Oklahoma statute's definition of an underinsured motor vehicle. Unlike Oklahoma, the West Virginia statute does not expressly include the insured vehicle in that definition. *See Russell v. American States Ins. Co.*, 813 F.2d 306 (10th Cir.1987); *State Farm Mutual Ins. Co. v. Wendt*, 708 P.2d 581 (Okla.1985).

torist coverage, W.Va.Code § 33–6–31, and consequently, the exclusion is valid. Second, the "owned by" exclusion is both plain and unambiguous and thus, will be applied as written. Finally, the State Auto policy specifically excludes any motor vehicle owned by the policy holder from the definition of an "underinsured motor vehicle." Therefore, the underinsured motorist coverage was intended to protect the insured against losses caused by the negligence of another motorist who is underinsured. Liability insurance is intended to compensate an injured guest passenger for any negligence on the part of the driver/insured.

Accordingly, we answer the first certified question as follows:

The owned-underinsured motor vehicle exclusion of the insurance policy issued to Mrs. Lowther excludes underinsured motorist coverage to the guest passenger, Lena Alexander.

Because we have answered the first question to exclude coverage for Mrs. Alexander, we do not reach the remaining certified questions.

Certified question answered.