IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 23-702

_____

FILED

**April 29, 2025**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY,
Petitioner,

v.

JAMES SKYLER COOPER,
Respondent.

_____

Certified Question from the
Fourth Circuit Court of Appeals
No. 22-1129

CERTIFIED QUESTION ANSWERED

_____

Submitted: January 14, 2025
Filed: April 29, 2025

Matthew J. Perry, Esq.
Jill E. Lansden, Esq.
Burns White, LLC
Huntington, West Virginia
Counsel for Petitioner

Jill Cranston Rice, Esq.
David R. Stone, Esq.
Morgantown, West Virginia
Counsel for Amicus Curiae
West Virginia Insurance Federation

R. Chad Duffield, Esq.
Farmer Cline & Campbell, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE TRUMP delivered the Opinion of the Court.

CHIEF JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1. "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syllabus Point 1, *Light v. Allstate Insurance Company*, 203 W. Va. 27, 506 S.E.2d 64 (1998).

2. "'*W. Va. Code*, 33-6-31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle.' Syllabus Point 4, in part, *State Automobile Mutual Insurance Company v. Youler*, 183 W. Va. 556, 396 S.E.2d 737 (1990)." Syllabus Point 1, in part, *Alexander v. State Automobile Mutual Insurance Company*, 187 W. Va. 72, 415 S.E.2d 618 (1992).

3. "'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus Point 2, *Taylor v. Nationwide Mutual Insurance Company*, 214 W. Va. 324, 589 S.E.2d 55 (2003).

4. Where a commercial automobile insurance policy insures certain owned vehicles and a class of non-owned vehicles for liability protection, West Virginia Code § 33-6-31 does not require the insurer to offer to the named insured underinsured motorist coverage for the class of non-owned vehicles.

i

**TRUMP, Justice**:

This case is before this Court upon the following certified question from the United States Court of Appeals for the Fourth Circuit:

> Does West Virginia Code § 33-6-31 require an insurer, who issues a commercial automobile insurance policy to a named insured providing liability coverage for particular owned vehicles and a class of non-owned vehicles, to offer underinsured motorist coverage for the class of non-owned vehicles?

Upon review of the parties' briefs,[1] appendix record, oral argument, and applicable legal authority, and for the reasons stated below, we answer the certified question in the negative and hold that where a commercial automobile insurance policy insures certain owned vehicles and a class of non-owned vehicles for liability protection, West Virginia Code § 33-6-31 does not require the insurer to offer to the named insured underinsured motorist coverage for the class of non-owned vehicles.

## I.  Factual and Procedural Background

The relevant facts and procedural history giving rise to the appeal before the Fourth Circuit were set forth by that court in its certification order[2] as follows:

---

[1] We acknowledge and extend our appreciation to the West Virginia Insurance Federation, which filed a brief as *amicus curiae*.

[2] *See Erie Ins. Prop. & Cas. Co. v. Cooper*, No. 22-1129, 2023 WL 8439753 (4th Cir. Dec. 5, 2023).

In August 2019, James Cooper was injured in a car accident while riding as a passenger in a car owned by Rick Huffman. When the accident occurred, Cooper and Huffman, both employees of Pison Management, LLC (Pison), were driving to a jobsite during the course of their employment with Pison. Because Cooper's injuries and resulting damages exceeded the [at-fault] third-party driver's insurance limits, Cooper sought underinsured motorist (UIM) coverage under Pison's commercial automobile policy (the policy) issued by Erie Insurance Property & Casualty Company (Erie).[3]

The policy provided $1 million in liability coverage for bodily injury and property damage for two particular vehicles owned by Pison (owned vehicles),[4] as well as a class of "non-owned" vehicles associated with 1-to-25 employees. The policy also provided $1 million in UIM coverage for the owned vehicles. Erie did not provide Pison with an option to purchase UIM coverage for the class of non-owned vehicles.

The policy described "non-owned" vehicles as "Employer's Non-Ownership Liability," and included vehicles owned by Pison's employees while being used in Pison's business.[5] The parties agree that Huffman's car qualified under the policy as falling within the class of non-owned vehicles.

---

[3] At the time of the accident, Mr. Cooper lived with his mother and grandmother and recovered UIM benefits under their policies of insurance covering the family vehicles. The insurance policy on Mr. Huffman's vehicle (the vehicle in which Mr. Cooper was riding) did not provide UIM coverage.

[4] The owned autos were identified on the Declarations as a 2004 Chevrolet Silverado and a 2019 Dodge Ram, both of which are styles of pickup trucks.

[5] The class of non-owned autos associated with "1-25 EMPLS" was collectively identified on the Declarations as "Auto 12." Non-owned autos were defined by the Erie policy as follows:

3. **Non-owned Autos** (Employers' Non-Ownership Liability). These are **autos you** do not own, hire, rent or borrow that are used in **your** business, but only for coverages for which a premium charge is shown. This includes **autos** owned by **your**

Continued . . .

Based on the policy's terms, Erie denied Cooper's claim for UIM coverage and filed suit in federal district court seeking a declaration that the policy did not provide the UIM coverage sought by Cooper. Cooper filed an answer and counterclaims seeking, in relevant part, a declaratory judgment that Erie violated West Virginia Code § 33-6-31. According to Cooper, that statute required Erie to provide Pison with the opportunity to elect UIM coverage for the class of non-owned vehicles. Cooper asserted that because Erie failed to make such an offer, UIM coverage existed by operation of law to cover Cooper as a passenger in Huffman's car. W. Va. Code § 33-6-31(b); *see also Thomas v. McDermitt*, 751 S.E.2d 264, 265 (W. Va. 2013) (explaining that when an insurer is "required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured").

The parties filed cross-motions for summary judgment, and the district court awarded judgment in favor of Cooper. The court held that the statute requires that an insurer make a commercially reasonable offer of UIM coverage "to *all* vehicles covered by [a liability] policy," including the class of non-owned vehicles.[6] Accordingly, the court issued a

---

partners, employees or members of their households, but only while used in **your** business or personal affairs.

[6] The district court found, and the Fourth Circuit agreed, that the policy did not provide "UIM coverage for Cooper while riding in Huffman's car." *Cooper*, at *5 n.2. As explained in the certification order,

[t]he "uninsured/underinsured" (UM/UIM) endorsement in the policy stated that "[w]e will pay damages" that "involve . . . bodily injury to 'you or others we protect.'" "You" was defined as the named insured, which under the policy was Pison. "Others we protect" included in relevant part: "anyone . . . while occupying any *owned auto* we insure" and "if you are an *individual*, anyone else while occupying a *non-owned auto we insure*." Because Pison was not an "individual" under the policy terms, we agree with the district court's holding that the plain language of the UM/UIM endorsement established that

Continued . . .

3

> declaratory judgment that Cooper was entitled to receive UIM
> coverage equivalent to the liability coverage limit, $1 million.

*Cooper*, at \*1-2 (footnotes added and omitted). Erie appealed the district court's ruling to the Fourth Circuit.

Finding no controlling West Virginia precedent to definitively decide the issue before it, the Fourth Circuit determined that certification of the following question to this Court was warranted:

> Does West Virginia Code § 33-6-31 require an insurer, who issues a commercial automobile insurance policy to a named insured providing liability coverage for particular owned vehicles and a class of non-owned vehicles, to offer underinsured motorist coverage for the class of non-owned vehicles?

We accepted the certified question by order entered August 28, 2024, and we heard oral argument on January 14, 2025.

---

> the policy did not provide UIM coverage to Cooper while
> riding in Huffman's car.

*Id.* Mr. Cooper also argued, in the alternative, that "the policy was ambiguous regarding whether UIM coverage applied" because the UM/UIM endorsement applied to "all autos," which Mr. Cooper argued included non-owned vehicles. *Id.* The Fourth Circuit rejected this argument (as did the district court) concluding that the declarations page showed that Pison did not pay premiums for UIM coverage for the non-owned vehicles. Rather, Pison paid premiums for UIM coverage only for the two owned vehicles that were listed on the declarations page. Accordingly, that the policy itself did not provide UIM coverage for the non-owned vehicle in which Mr. Cooper was riding at the time of the accident is not at issue before this Court.

4

## II. Standard of Review

This case presents a certified question from the United States Court of Appeals for the Fourth Circuit. "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998); *accord* Syl. Pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.").

## III. Discussion

Pison, the named insured and policyholder, purchased a commercial automobile insurance policy from Erie that provided liability coverage for two vehicles Pison owned, as well as vehicles owned by its employees while used in Pison's business. Erie represents, and Mr. Cooper does not dispute, that Pison's purpose in purchasing liability coverage for the class of non-owned vehicles associated with "1-25 EMPLS" was to provide Pison with protection from vicarious liability claims resulting from its employees' operation of their personal vehicles while used in Pison's business. *See* n.5, *supra.* At issue in this case is whether West Virginia Code § 33-6-31 required Erie to offer Pison UIM coverage for this class of vehicles. If Erie was so required, Erie's failure to offer Pison UIM coverage upon the non-owned vehicles would require the policy to be

5

reformed to include UIM coverage for such vehicles (in this case, Mr. Huffman's vehicle) up to an amount not less than the policy's limit of liability coverage.[7]

Before we consider the parties' arguments, we first review the relevant provisions of West Virginia Code § 33-6-31. Mandatory liability coverage is governed by West Virginia Code § 33-6-31(a), which provides, in relevant part, as follows:

> (a) No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, may be issued or delivered in this state to the owner of such vehicle, or may be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the Division of Motor Vehicles of this state, unless it contains a provision insuring the named insured and any other person, . . . responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his or her spouse against liability for death or bodily injury sustained or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person: Provided, That in any such automobile liability insurance policy or contract, or endorsement thereto, if coverage resulting from the use of a nonowned automobile is conditioned upon the consent of the owner of such motor vehicle, the word "owner" shall be construed to include the custodian of such nonowned motor vehicles.

---

[7] *See* W. Va. Code § 33-6-17 (providing that when an otherwise valid insurance policy "contains any condition or provision not in compliance with the requirements of" Chapter 33, it will be construed so as to contain the coverage required by West Virginia law); *see also Gibson v. Northfield Ins. Co.*, 219 W. Va. 40, 631 S.E.2d 598 (2005).

6

Regarding UIM coverage, West Virginia Code § 33-6-31(b) provides that when an insurer issues a liability policy under subsection (a), it must offer UIM coverage to the insured at least in the amount equivalent to the liability coverage provided by the policy:

. . . .

> Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without set off against the insured's policy or any other policy.

*Id.*, in relevant part.

Finally, the term "insured," as used in West Virginia Code § 33-6-31, is defined in subsection (c) as follows:

> As used in this section, . . . the term "insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above[.]

For UIM purposes, this Court has explained West Virginia Code § 33-6-31(c)'s definition of "insured" as

> provid[ing] for two classes of insureds. The first class of insureds [Class I insureds] includes "[t]he named insured and his or her spouse and resident relatives" who "enjoy broader

7

uninsured/underinsured motorist protection because their coverage is not limited to their occupancy of a particular motor vehicle." When a person seeking coverage does not fall into that first class . . . [West Virginia Code] § 33-6-31(c) specifies that coverage is available only if he or she was injured or damaged by an uninsured or underinsured motorist while using "the motor vehicle to which the policy applies" [Class II insureds].

*Progressive Max Ins. Co. v. Brehm*, 246 W. Va. 328, 333, 873 S.E.2d 859, 864 (2022) (footnotes omitted).

Mr. Cooper argues that West Virginia Code § 33-6-31 required Erie to offer UIM coverage for every vehicle it insured for liability protection under the policy (owned and non-owned) and that, as a passenger in a covered, non-owned vehicle, he qualified as a Class II insured who was entitled to be paid all sums recoverable from an underinsured driver. Mr. Cooper argues that this Court should uphold "the preeminent public policy of this state in [UM/UIM] motorist cases [which] is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the [UM/UIM] motorist coverage." *State Auto. Mut. Ins. Co. v. Youler*, 183 W. Va. 556, 564, 396 S.E.2d 737, 745 (1990) (emphasis in original).

Erie counters that there is no statutory requirement that an insurer offer UIM coverage to a named insured for vehicles the named insured does not own. According to Erie, the well-established purpose of UIM coverage is to protect the named insured (and permissive users of the named insured's vehicle) from underinsured drivers as evidenced by the fact that the statutory definition of "insured" specifically ties UIM coverage to the

8

named insured and the vehicles the named insured owns. Erie argues that Mr. Cooper does not qualify as a Class II insured because he was not injured by an underinsured motorist while using a vehicle owned by the named insured—that is, "the motor vehicle to which the policy applies," W. Va. Code § 33-6-31(c); Mr. Cooper was, instead, a passenger in a non-owned vehicle. We agree with Erie.

For guidance, we look to *Stone v. Liberty Mutual Insurance Company*,[8] a case decided by the Supreme Court of Virginia upon a certified question from the Fourth Circuit that is both factually and legally similar to the case before us. In *Stone*, the plaintiff was employed as a pizza delivery driver for Tidewater Pizza, Inc. (Tidewater Pizza); he drove his own vehicle when making deliveries.[9] While working within the scope of his employment, he was involved in a vehicle accident caused by the negligence of another driver. The plaintiff sought UIM coverage under Tidewater Pizza's commercial business automobile policy, which named Tidewater Pizza as the insured and insured two automobiles (a Honda and a Ford) that Tidewater Pizza owned. Under the terms of the policy, the plaintiff's vehicle was a "covered auto" for purposes of liability protection but not for UIM purposes. The federal district court reformed the policy to provide the plaintiff with UIM coverage because it concluded that the policy conflicted with Virginia's UIM statute "by failing to provide [UIM] coverage equal to the liability coverage it extended to

---

[8] 478 S.E.2d 883 (Va. 1996).

[9] *Id.* at 14.

9

drivers of covered automobiles like [the plaintiff]."[10] Upon Liberty Mutual's appeal of that

decision, the Fourth Circuit certified a question to the Supreme Court of Virginia asking

"Whether Tidewater Pizza's policy with Liberty Mutual violated [Virginia Code] 38.220

---

[10] *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 190 (4th Cir. 1997) (Fourth Circuit decision following Supreme Court of Virginia's opinion answering certified question); *see also Stone*, 478 S.E.2d at 884.

10

A [Virginia's UIM statute],[11] because [the plaintiff] is an insured under [Virginia Code]

38.2-2206 B [defining "insured"]."[12]

[11] Virginia's UM/UIM statute then in effect provided, in pertinent part, as follows:

> **Uninsured motorist insurance coverage. –** A. Except as provided in subsection J of this section, no policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than the requirements of § 46.2–100. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2–2202. The endorsement or provisions shall also obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B of this section.

Va. Code Ann. § 38.2–2206 A.

[12] *Stone*, 105 F.3d at 190 (footnote added).

"As used in subsection[] A" (Virginia's UIM statute), the definition of "insured" then in effect included

> the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the
>
> Continued . . .

11

As in the present case, the plaintiff in *Stone* argued that "he was operating an automobile to which the Liberty Mutual policy applied because he was operating a 'covered auto' under the [policy's] liability provisions."[13] The plaintiff argued that Virginia's UIM statute thus required the insurer to provide him UIM coverage because he met the statutory definition of "insured."[14]

The court in *Stone* disagreed, observing that the UIM statute "is meant to protect an insured motorist, his family and permissive users of his vehicle against" injuries caused by an underinsured driver, "not to provide 'insurance coverage upon each and every [under]insured vehicle to everyone.'"[15] The court also focused on the statutory definition of the term "insured"—particularly, "insureds of the second class," who is "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above."[16] The court "dissect[ed] the clauses" in

motor vehicle to which the policy applies or the personal representative of any of the above.

Va. Code. Ann. § 38.2-2206 B.

[13] *Stone*, 478 S.E.2d at 884.

[14] *Id.*

[15] *Id.* at 885 (quoting *Bayer v. Travelers Indem. Co.*, 267 S.E.2d 91, 93 (Va. 1980) (internal citation omitted)).

[16] *Id.* at 886.

the definition and found that the statute twice refers to "*the* motor vehicle to which the policy applies" rather than "'a,' 'any,' 'every,' or 'all' 'motor vehicles to which the policy applies.'"[17] The court determined that the plaintiff

> was not using either of "the" motor vehicles to which the policy applies, the Ford or the Honda; he was using his own motor vehicle. Thus, the statute only requires, as to insureds of the second class, that [UIM] motorist coverage be provided to those who are in either of *the* motor vehicles listed in the policy, as opposed to 'any' vehicle to which the policy might apply.[18]

Even more importantly, the *Stone* court reasoned, was the statutory language

> providing that the person who uses the motor vehicle must do so "with the expressed or implied consent of the named insured." Obviously, when the General Assembly employs this language, it is resorting to language relating to the omnibus clause found in Code § 38.2-2204(A),[19] which deals with

---

[17] *Id.*

[18] *Id.* (emphasis in original)

[19] Virginia's omnibus requirements for liability coverage then in effect provided:

> **Liability insurance on motor vehicles, aircraft and watercraft; standard provisions: "omnibus clause."** – A. No policy or contract of bodily injury or property damage liability insurance, covering liability arising from the ownership, maintenance, or use of any motor vehicle, aircraft, or private pleasure watercraft, shall be issued or delivered in the Commonwealth to the owner of such vehicle, aircraft, or watercraft, or shall be issued or delivered by any insurer licensed in the Commonwealth upon any motor vehicle, aircraft, or private pleasure watercraft that is principally garaged, docked, or used in the Commonwealth, unless the policy contains a provision insuring the named insured, and any other person using or responsible for the use of the motor

Continued . . .

13

liability insurance covering motor vehicles (policy must contain a provision insuring any person using the motor vehicle "with the expressed or implied consent of the named insured").

When construing such language, we repeatedly have held that a named insured generally cannot give permission to use a vehicle that the named insured does not own. For example, in *Nationwide Mut. Ins. Co. v. Cole,* 203 Va. 337, 341, 124 S.E.2d 203, 206 (1962), the Court said that "in order for one's use and operation of an automobile to be within the meaning of the omnibus coverage clause requiring permission of the named insured, the latter must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission." *Accord Virginia Auto Mut. Ins. Co. v. Brillhart,* 187 Va. 336, 343, 46 S.E.2d 377, 380 (1948).

But Stone contends that because he was operating a "covered auto" within the meaning of the liability provisions of the policy, he therefore qualified as an "insured" under the

---

vehicle, aircraft, or private pleasure watercraft with the expressed or implied consent of the named insured, against liability for death or injury sustained, or loss or damage incurred within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle, aircraft, or watercraft by the named insured or by any such person. Each such policy or contract of liability insurance, or endorsement to the policy or contract, insuring private passenger automobiles, aircraft, or private pleasure watercraft principally garaged, docked, or used in this Commonwealth, that has as the named insured an individual or husband and wife and that includes, with respect to any liability insurance provided by the policy, contract or endorsement for use of a nonowned automobile, aircraft or private pleasure watercraft, any provision requiring permission or consent of the owner of such automobile, aircraft, or private pleasure watercraft for the insurance to apply, shall be construed to include permission or consent of the custodian in the provision requiring permission or consent of the owner.

Va. Code Ann. § 38.2-22-4 A.

14

uninsured motorist statute in that he was using a motor vehicle to which the policy applies within the mandate of subsection (B). Stone argues that the employer, Tidewater, impliedly gave Stone permission to operate Stone's vehicle when he was using it in the scope of the employer's business. We reject these contentions.

The "expressed or implied consent" language of the subsection modifies "the motor vehicle to which the policy applies" clause. If the legislature, in the [UIM] statute, had meant to include as insureds of the second class occupants of non-owned vehicles, then the General Assembly surely would have used language like it uses at the end of Code § 38.2-2204(A), which deals with the sort of permission needed when one is operating a non-owned vehicle. That statute refers to "permission or consent of the owner" of a non-owned vehicle, and deems permission or consent of "the custodian" to be the permission of the owner. The [UIM] statute contains no such expansive language.

Simply put, "the vehicle" referred to in subsection (B) includes only owned, not non-owned vehicles. Thus, there is no statutory mandate that requires the courts to ignore the insurer's policy language as written.[20]

We find the reasoning in *Stone* to be persuasive in interpreting West Virginia law. We begin with the long-recognized concept that the purpose of UIM coverage is to "'enable *the insured to protect himself*, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured.'" *Brehm*, 246 W. Va. at 335, 873 S.E.2d at 865 (quoting *Deel v. Sweeney*, 181 W. Va. 460, 463, 873 S.E.2d 92, 95 (1989) (emphasis added)). Indeed, we have held that "*W. Va. Code*, 33-6-31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage

---

[20] *Id.*

15

limits, *from one's own insurer*, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle." Syl. Pt. 1, in part, *Alexander v. State Auto Mu. Ins. Co.*, 187 W. Va. 72, 415 S.E.2d 618 (1992) (emphasis added). *See also id.* at 79, 415 S.E.2d at 625 ("As long as the insured owns both the underinsured motorist policy in question and the vehicle, then the insured's vehicle will not be considered an underinsured motor vehicle for purposes of the insured's own underinsured motorist coverage. Because an underinsured motorist policy is intended to benefit the person who bought the policy . . . [UIM] coverage is not available to a guest passenger unless the statute or policy language specifically provides for such coverage."). We have further explained that

> [u]nderinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. . . . When a tortfeasor is underinsured, the claimant recovers third party liability benefits from the tort-feasor's insurance and supplements this recovery with the underinsured motorist benefits available through *his or her own policy of insurance*.

*Thomas v. Nationwide Mut. Ins. Co.*, 188 W. Va. 640, 643, 644, 425 S.E.2d 595, 598, 599 (1992) (internal citations omitted and emphasis added).

That the purpose of UIM coverage is uniquely for the benefit of the named insured and permissive users of the named insured's vehicle is reflected in "the requirements of our [UIM] statute, which recognizes the distinction between Class One and Class Two insureds." *Starr v. State Farm Fire and Cas. Co.*, 188 W. Va. 313, 318, 423 S.E.2d 922, 927 (1992). The Class I insured includes the named insured, his or her spouse,

16

and their resident relatives "while in a motor vehicle or otherwise." W. Va. Code § 33-6-31(c). The statutory definition of a Class I insured

> plainly mandates that coverage against a driver or operator of an underinsured motor vehicle protects the person named on the declarations page of the policy and their spouse and their relatives, against bodily injuries caused by the underinsured driver, regardless of where they are when the injury occurs. There is no spatial or temporal requirement that the insured be riding in the insured car for coverage to apply. As one court stated, underinsured motorist coverage
>
> > . . . is portable: The insured and family members are covered not only when occupying the covered vehicle, but also when in another automobile, and when on foot, on a bicycle or even sitting on a porch. . . .

*Cantrell v. Cantrell*, 213 W. Va. 372, 378, 582 S.E.2d 819, 825 (2003) (Starcher, J., dissenting) (quoting *Bradley v. Mid-Century Ins. Co.*, 294 N.W.2d 141, 145-152 (Mich. 1980), *overruled on other grounds, Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776 (Mich. 2003)). *See Starr,* 188 W. Va. at 318, 423 S.E.2d at 927 ("Class One insureds . . . enjoy broader uninsured/underinsured motorist protection because their coverage is not limited to their occupancy of a particular motor vehicle." (Footnote omitted)). And, indeed, we note that because Mr. Cooper resided with his mother and grandmother at the time of the accident and while riding in Mr. Huffman's vehicle, he qualified as a Class I insured for purposes of recovering UIM benefits under these relatives' policies of insurance covering family vehicles. As it relates to his status as an insured for purposes of UIM coverage in this case, however, Mr. Cooper would not be, nor does he claim he would have

been, a Class I insured, as he is not the named insured, the spouse of the named insured, or a resident relative of the named insured.

Rather, Mr. Cooper contends that he qualifies as a Class II insured who is entitled to UIM coverage because he was injured by an underinsured motorist while he was using, with Pison's consent, a non-owned vehicle to which the liability policy applies. *See* W. Va. Code § 33-6-31(c). We disagree.

For UIM purposes, a Class II insured is defined by West Virginia Code § 33-6-31(c) as "any person . . . who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." "'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 2, *Taylor v. Nationwide Mut. Ins. Co.*, 214 W. Va. 324, 589 S.E.2d 55 (2003). To that end, we must determine whether "the motor vehicle to which the policy applies" refers to the motor vehicle(s) owned by the named insured and listed on the policy of insurance or, as Mr. Cooper contends, to all motor vehicles (both owned and non-owned) covered for liability under the policy. Importantly, "the expressed or implied consent" language of the statutory definition modifies "the motor vehicle to which the policy applies" clause.[21] This language corresponds to the statutory omnibus provision requiring that liability policies cover (in addition to the named insured) "any other person . . .

---

[21] *See Stone*, 478 S.E.2d at 886.

18

responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his or her spouse." W. Va. Code 33-6-31(a).[22] Such language has been construed to mean that

> the word "permission" or "consent" connotes power to grant or withhold it, and therefore, in order for one's use and operation of an automobile to be within the meaning of an omnibus clause requiring the permission or consent of the named insured, the latter must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission.

*Keystone Ins. Co. v. Fidelity & Cas. Co. of N.Y.*, 260 A.2d 275, 277-78 (Md. 1970).[23] We construe the permissive use provision in the statutory definition of a Class II insured for UIM purposes similarly. Pison, the named insured, lacked the authority to consent to Mr. Cooper's use of a motor vehicle Pison did not own. That the non-owned vehicle in which Mr. Cooper was riding when he was injured by an underinsured motorist was insured for liability under the policy issued to Pison did not give Pison an interest in the vehicle such

---

[22] *See id.*

[23] *See id.* at 279 ("In short, in order to bring the omnibus clause into play, the policy here in controversy required consent by the named insured. The named insured was not the owner. Therefore, she could not validly consent to the use of the vehicle."); *see also Universal Underwriters Ins. Co. v. Taylor*, 185 W. Va. 606, 612, 408 S.E.2d 358, 364 (1991) ("[T]he state motor vehicle omnibus clause requires an insurer to provide coverage when permission has been granted by the insured owner of the vehicle or its authorized agent to a driver who then causes injury or property damage during the permissive use."); *United Servs. Auto. Ass'n v. Nat'l Farmers Union Prop. & Cas.,* 891 P.2d 538, 541 (N. M. 1995) (holding that coverage under the omnibus clause "extends to any subsequent permittee operating an insured vehicle as long as the named insured has given his or her initial permission to use the vehicle"); *Stone*, 478 S.E.2d at 886.

that it had possession and control of it and could consent to Mr. Cooper's use or occupancy of it so as to entitle Mr. Cooper to UIM coverage. *See Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482, 500 (Md. Ct. Spec. App. 1997) ("One prerequisite to coverage under a permissive use provision . . . is that the person ostensibly giving permission or consent must have the power to do so"). It follows then that "the motor vehicle to which the policy applies" that is used "with the consent, expressed or implied, of the named insured" necessarily refers to the motor vehicle owned by the named insured and listed on the policy of insurance. *See Starr,* 188 W. Va. at 318-19, 423 S.E.2d at 927-28 (stating that, for purposes of UIM protection, the Class II insured "is statutorily limited to coverage under the policy covering the vehicle he or she was occupying at the time of the accident. . . The second class consists of the permissive users of *the named insured's vehicle*." (Emphasis added)). Accordingly, because Mr. Cooper was not using, with the consent, express or implied, of the named insured (Pison), either of the motor vehicles owned by the named insured to which the policy applies, he does not qualify as a Class II insured for purposes of UIM coverage.

Simply put, "[d]etermining whether a person is an 'insured person' is the first step to determine whether he or she is entitled to coverage." *Brehm*, 246 W. Va. at 331, 873 S.E.2d at 862. Thus, a person seeking UIM coverage must first meet the statutory definition of "insured" under West Virginia Code § 33-6-31(c): West Virginia Code § 33-6-31(b) requires that policies of insurance "provide an option . . . with appropriately adjusted premiums to pay *the insured* all sums which he or she is legally entitled to recover

20

as damages" from an underinsured motorist. (Emphasis added). A person who does not qualify as either a Class I or Class II insured and, therefore, does not meet the statutory definition of "insured," is not entitled to UIM coverage for injuries caused by the negligence of an underinsured motorist.

Based upon all of the above, therefore, we answer the certified question in the negative and hold that where a commercial automobile insurance policy insures certain owned vehicles and a class of non-owned vehicles for liability protection, West Virginia Code § 33-6-31 does not require the insurer to offer to the named insured underinsured motorist coverage for the class of non-owned vehicles.

**IV. Conclusion**

In conclusion, for the reasons explained in the body of this opinion, we answer the certified question from the United States Court of Appeals for the Fourth Circuit as follows:

> Does West Virginia Code § 33-6-31 require an insurer, who issues a commercial automobile insurance policy to a named insured providing liability coverage for particular owned vehicles and a class of non-owned vehicles, to offer underinsured motorist coverage for the class of non-owned vehicles?
>
> Answer: No.

The certified question having been answered, this case is dismissed from the docket of this Court and the matter is returned to the Fourth Circuit for further proceedings consistent with this opinion.

21

Certified question answered.